[No. A098704. First Dist., Div. Five. Dec. 9, 2003.]

RYAN GUTIERREZ et al., Plaintiffs and Respondents, v.
AUTOWEST, INC., et al., Defendants and Appellants.

**[CERTIFIED FOR PARTIAL PUBLICATION\*]**

---

\*Pursuant to California Rules of Court, rules 976(b) and 976.1, parts III. and IV. of this
opinion are not certified for publication.

82

COUNSEL

Christa & Jackson, Laura K. Christa, William E. Weinberger and Deborah Bucksbaum for Defendants and Appellants.

Kemnitzer, Anderson, Barron & Ogilvie, Nancy Barron, Christopher F. Jennings and Bryan Kemnitzer for Plaintiffs and Respondents.

OPINION

SIMONS, J.—The United States Supreme Court has "rigorously enforce[d] agreements to arbitrate" civil disputes (*Dean Witter Reynolds Inc v. Byrd* (1985) 470 U.S. 213, 221 [84 L.Ed.2d 158, 105 S.Ct. 1238]), including those in which employees and consumers rely on statutory claims (*Green Tree Fin. Corp.-Ala. v. Randolph* (2000) 531 U.S. 79, 89 [148 L.Ed.2d 373, 121 S.Ct. 513] (*Green Tree*); *Shearson/American Express, Inc. v. McMahon* (1987) 482 U.S. 220, 223, 226 [96 L.Ed.2d 185, 107 S.Ct. 2332]). The high court has, however, acknowledged the need to regulate arbitration to ensure that such claims may be properly vindicated in the arbitral forum (*Mitsubishi Motors v. Soler Chrysler-Plymouth* (1985) 473 U.S. 614, 628, 637 [87 L.Ed.2d 444, 105 S.Ct. 3346] (*Mitsubishi*)), a concern echoed by our own Supreme Court (*Armendariz v. Foundation Health Psychcare Services, Inc.* (2000) 24 Cal.4th 83, 110 [99 Cal.Rptr.2d 745, 6 P.3d 669] (*Armendariz*)). Both courts have recognized the centrality of costs to that concern: excessive arbitral fees and

costs[1] could bar access to that forum resulting in a loss of the statutory claims. (*Green Tree*, at p. 90; *Armendariz*, at pp. 110–111 [employees relying on California Fair Employment and Housing Act (FEHA) (Gov. Code, § 12900 et seq.) claims may not be required to pay any type of unique arbitral fee].) In this case, we conclude consumers may challenge a predispute arbitration clause as unconscionable if the fees required to initiate the process are unaffordable, and the agreement fails to provide the consumer an effective opportunity to seek a fee waiver. In addition, if, as here, the consumer sues under a state consumer protection statute providing unwaivable rights, we imply in the arbitration clause an agreement that unaffordable fees will not be allocated to the consumer at any point in the arbitration process.

BACKGROUND

*The Lease Transaction[2]*

In March 2000, Ryan Gutierrez (Gutierrez) viewed an infomercial from defendants Autowest, Inc. (doing business as Autowest Dodge, Chrysler, Plymouth, Isuzu), and AutoNation USA Corporation (hereafter collectively AutoNation) offering to lease "all" new Dodge Durangos for $249 per month with "zero down." The next morning, Gutierrez telephoned the Autowest Dodge dealership and spoke with a salesperson, who confirmed that he qualified for the lease of a Durango at the advertised price. The following day Gutierrez went to the dealership to enter into the lease transaction. After selecting a vehicle, Gutierrez was contacted by a sales manager, who informed him the lease would cost $489 per month. When Gutierrez inquired about the advertised price, he was told that in order to receive that price he would have to make a down payment of $5,900. Gutierrez subsequently signed an agreement to lease a Durango for $489.53 per month, with a down payment of $957.53 (hereafter the lease). Under the terms of the lease, AutoNation assigned the lease and all rights, title and interest in the vehicle to Wells Fargo Auto Finance, Inc. A copy of the lease was attached as an exhibit to the complaint.

---

[1] Throughout we use the terms "fees," "costs," and "fees and costs" interchangeably to reflect the charges levied by the judicial or arbitral forum.

[2] The factual background contained in the part entitled *"The Lease Transaction"* is drawn from the allegations of the complaint and the declaration of Ryan Gutierrez dated December 21, 2001.

The back of the lease contained numerous contract provisions including the arbitration clause that AutoNation has sought to enforce. It read:

"Any controversy or claim between or among you and me, including, but not limited to, those arising out of or relating to this lease or any related agreements or any claim based on or arising from an alleged tort, shall at the request of either party be determined by arbitration. The arbitration shall be conducted in accordance with the United States Arbitration Act (Title 9, U.S. Code), notwithstanding any choice of law provision in this lease, and under the authority and rules of the American Arbitration Association then in effect. No provision of this paragraph shall limit either your or my right to pursue self-help or to obtain provisional or ancillary remedies from a court of competent jurisdiction before, after, or during pendency of any arbitration. The exercise of any provisional remedy or the filing of a legal action, does not waive the right of either party to resort to arbitration."

(As shown in the lease using Arial Narrow eight-point typeface.)[3]

Gutierrez was not informed by anyone at Autowest Dodge that there was an arbitration clause on the back of the lease, nor was he aware that the lease contained such a clause when he signed it. Gutierrez was never given or shown a copy of the arbitration rules of the American Arbitration Association (AAA), the designated arbitration provider.

### The Lawsuit

Believing they had been victimized by a "bait and switch" fraud engineered by the automobile dealership, plaintiffs, Gutierrez and his wife Jamie, filed this lawsuit against AutoNation and Wells Fargo Bank, N.A. (Wells Fargo) on behalf of themselves and other similarly situated consumers. The complaint includes causes of action against all defendants alleging violation of the California Vehicle Leasing Act (VLA) (Civ. Code, § 2985.7 et seq.), and violation of California's unfair competition law (UCL) (Bus. & Prof. Code, § 17200 et seq.). The complaint includes separate causes of action against AutoNation alleging fraud and negligent misrepresentation, violation of the California Consumers Legal Remedies Act (CLRA) (Civ. Code, § 1750

---

[3] The arbitration clause reads as follows: "Any controversy or claim between or among you and me, including, but not limited to, those arising out of or relating to this lease or any related agreements or any claim based on or arising from an alleged tort, shall at the request of either party be determined by arbitration. The arbitration shall be conducted in accordance with the United States Arbitration Act (Title 9, U.S. Code), notwithstanding any choice of law provision in this lease, and under the authority and rules of the American Arbitration Association then in effect. No provision of this paragraph shall limit either your or my right to pursue self-help or to obtain provisional or ancillary remedies from a court of competent jurisdiction before, after, or during pendency of any arbitration. The exercise of any provisional remedy or the filing of a legal action, does not waive the right of either party to resort to arbitration."

et seq.), and false advertising (Bus. & Prof. Code, § 17500 et seq.).[4] The complaint asserts a separate cause of action against Wells Fargo seeking rescission and restitution.

AutoNation filed a petition to compel arbitration under the arbitration clause in the lease.[5] Plaintiffs opposed the petition, in part, on the ground that the arbitral forum fees exceeded their ability to pay. In support of this contention, plaintiffs submitted, among other exhibits, a set of the AAA Commercial Dispute Resolution Procedures (including Mediation and Arbitration Rules) and a declaration disclosing their monthly net income and expenses and their savings.

The trial court denied the petition. It found that the amount in controversy exceeded $10,000, and hence the AAA Commercial Arbitration Rules (AAA rules) would apply. Under these rules, certain arbitral fees depend on the size of the claim, which the parties acknowledged had a potential value of at least $500,000. The court found that plaintiffs would be required to expend more than $10,000, exclusive of attorney fees, to have their case arbitrated. The court concluded that "[t]he imposition of substantial forum fees which prevent an aggrieved party from vindicating his or her statutory rights is contrary to public policy, and is therefore grounds for invalidating an arbitration agreement and denying a petition to compel arbitration under Code of Civil Procedure sections 1281 and 1281.2. [(*Armendariz, supra,* 24 Cal.4th at p. 110; see also *Green Tree, supra,* 531 U.S. at p. 90.)] Because the contract lacks an independent cost provision and a severability clause, the court lacks the ability to sever or restrict any of the contractual provisions or terms, so as to render the arbitration clause in this case enforceable." AutoNation filed a timely appeal from this order. (Code Civ. Proc., § 1294, subd. (a).)

### DISCUSSION

■ Any analysis of the enforceability of an arbitration clause properly begins with a discussion of the Federal Arbitration Act (FAA) (9 U.S.C. § 1 et seq.), and its preemptive effect on state laws that impair the enforceability of

---

[4] The VLA cause of action is the sole cause of action asserted as a class action. The cause of action for violation of the UCL seeks an injunction, disgorgement and restitution. The cause of action for false advertising is a representative action also seeking an injunction, disgorgement and restitution.

[5] Wells Fargo declined to invoke the arbitration clause and has requested that plaintiffs' claims against Wells Fargo *not* be sent to arbitration.

agreements to arbitrate.[6] The FAA was enacted to overcome the unwillingness of the courts to enforce agreements to arbitrate and "to 'place such agreements "upon the same footing as other contracts," ' [citations]." (*Allied-Bruce Terminix Cos. v. Dobson* (1995) 513 U.S. 265, 270–271 [130 L.Ed.2d 753, 115 S.Ct. 834].) Section 2 of the FAA provides that arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." (9 U.S.C. § 2.) California law is to the same effect. (Code Civ. Proc., §§ 1281, 1281.2, subd. (b).) Thus, we may not single out arbitration agreements as suspect and impose special burdens on them. "[U]nder California law, as under federal law, an arbitration agreement may only be invalidated for the same reasons as other contracts." (*Armendariz, supra,* 24 Cal.4th at p. 98.)

(2) *Armendariz* recognized two distinct defenses to a petition to compel arbitration, which we will evaluate separately. First, we consider whether the fee provision is unconscionable, a defense available to any consumer, regardless of the type of claim being arbitrated. Second, we decide whether the arbitration clause constitutes a private agreement impairing the exercise of unwaivable *statutory* rights enacted for a public purpose. (*Armendariz, supra,* 24 Cal.4th at pp. 100–102, 113–114.) Since each of these defenses is a generally available contract formation defense that does not single out arbitration agreements, neither violates the FAA. (*Doctor's Associates, Inc. v. Casarotto* (1996) 517 U.S. 681, 687 [134 L.Ed.2d 902, 116 S.Ct. 1652]; *Armendariz, supra,* 24 Cal.4th at p. 114.) In the published portion of this opinion, we reach the following conclusions:

1. The mandatory arbitration agreement contained in the lease is adhesive.

2. The mandatory arbitration agreement in the lease is substantively unconscionable because it requires plaintiffs to pay substantial fees to *initiate* the arbitration process, without providing an opportunity to obtain a waiver if the costs exceed plaintiffs' ability to pay.

3. Consumers relying on unwaivable statutory claims are entitled to protection from the imposition of unreasonable forum fees.

4. While such consumers are not entitled to shift all arbitral fees to the nonconsumer party, a mandatory arbitration agreement encompassing unwaivable *statutory* rights may not impose *any* forum fees that exceed the consumer's ability to pay.

---

[6] Court decisions on the preemptive effect of the FAA do not distinguish between state statutes, administrative regulations and judicial decisions that burden arbitration agreements. (*Securities Industry Ass'n v. Connolly* (1st Cir. 1989) 883 F.2d 1114, 1120 & fn. 4.)

5. The matter is remanded for the trial court to redetermine if it should sever the costs provision requiring the payment of substantial fees to initiate the arbitration and enforce the arbitration. If the trial court severs the provision, AAA may impose those costs on AutoNation, which may choose to pay them or forgo the arbitration.

In the unpublished portion of this opinion, we reject plaintiffs' contentions that the arbitration clause violates the requirement in the VLA that every agreement in an automobile lease be contained in a single document (Civ. Code, § 2985.8, subd. (a)), and that the restitution and disgorgement claims brought under Business and Professions Code sections 17200 and 17500 are inarbitrable.

I. *Unconscionability*

 A. *Background*

█ Civil Code section 1670.5, subdivision (a) provides, in pertinent part, that a contract clause found to be unconscionable is unenforceable, unless the court severs the clause or so limits its application as to avoid any unconscionable result.[7] Under this statute, a court may not refuse to enforce a contract clause unless it determines that the clause is both procedurally and substantively unconscionable. (*Armendariz, supra,* 24 Cal.4th at p. 114; *A & M Produce Co. v. FMC Corp.* (1982) 135 Cal.App.3d 473, 486–487 [186 Cal.Rptr. 114] (*A & M Produce*).)

█ The procedural element focuses on "oppression" or "surprise." (*A & M Produce, supra,* 135 Cal.App.3d at pp. 486, 491; accord, *Armendariz, supra,* 24 Cal.4th at p. 114.) Where the parties to a contract have unequal bargaining power and the contract is not the result of real negotiation or meaningful choice, it is oppressive. "Surprise" is defined as "the extent to which the supposedly agreed-upon terms of the bargain are hidden in the prolix printed form drafted by the party seeking to enforce the disputed terms." (*Armendariz,* at p. 114; *Stirlen v. Supercuts, Inc.* (1997) 51 Cal.App.4th 1519, 1532 [60 Cal.Rptr.2d 138]; *A & M Produce,* at p. 486.) "The procedural element of an unconscionable contract generally takes the form of a contract of adhesion." (*Little v. Auto Stiegler* (2003) 29 Cal.4th 1064, 1071 [130 Cal.Rptr.2d 892, 63 P.3d 979] (*Little*); see *Fittante v. Palm Springs Motors, Inc.* (2003) 105 Cal.App.4th 708, 721

---

[7] Civil Code section 1670.5, subdivision (a) states: "If the court as a matter of law finds the contract or any clause of the contract to have been unconscionable at the time it was made the court may refuse to enforce the contract, or it may enforce the remainder of the contract without the unconscionable clause, or it may so limit the application of any unconscionable clause as to avoid any unconscionable result."

[129 Cal.Rptr.2d 659]; *Flores v. Transamerica HomeFirst, Inc.* (2001) 93 Cal.App.4th 846, 853 [113 Cal.Rptr.2d 376] (*Flores*).) An adhesive contract is defined as " 'a standardized contract, which, imposed and drafted by the party of superior bargaining strength, relegates to the subscribing party only the opportunity to adhere to the contract or reject it.' [Citation.]" (*Armendariz*, at p. 113.)

■ Of course, simply because a provision within a contract of adhesion is not read or understood by the nondrafting party does not justify a refusal to enforce it. The unbargained-for term may only be denied enforcement if it is also *substantively* unreasonable. (*A & M Produce, supra,* 135 Cal.App.3d at pp. 486–487.) Substantive unconscionability focuses on whether the provision is overly harsh or one-sided and is shown if the disputed provision of the contract falls outside the "reasonable expectations" of the nondrafting party or is "unduly oppressive." (*Armendariz, supra,* 24 Cal.4th at pp. 113–114; *Graham v. Scissor-Tail, Inc.* (1981) 28 Cal.3d 807, 820 [171 Cal.Rptr. 604, 623 P.2d 165]; *Flores, supra,* 93 Cal.App.4th at p. 853 & fn. 6; *A & M Produce,* at p. 487.) Some courts have imposed a higher standard: the terms must be " 'so one-sided as to *shock the conscience.*' [Citation.]" (*American Software, Inc. v. Ali* (1996) 46 Cal.App.4th 1386, 1391 [54 Cal.Rptr.2d 477].) Where a party with superior bargaining power has imposed contractual terms on another, courts must carefully assess claims that one or more of these provisions are one-sided and unreasonable.

■ Though courts refuse to enforce only those agreements that are both procedurally and substantively unconscionable, the two factors need not each exist to the same degree. "[T]he more substantively oppressive the contract term, the less evidence of procedural unconscionability is required to come to the conclusion that the term is unenforceable, and vice versa." (*Armendariz, supra,* 24 Cal.4th at p. 114.)

B. *The Disputed Arbitration Clause is Procedurally and Substantively Unconscionable*

Although the trial court provided little insight into its analysis, the order denying a petition to compel arbitration, like any other judgment or order of a lower court, is presumed to be correct, and all intendments and presumptions are indulged to support the order on matters as to which the record is silent. (*Denham v. Superior Court* (1970) 2 Cal.3d 557, 564 [86 Cal.Rptr. 65, 468 P.2d 193].) Implicit in the trial court's decision is its determination that the arbitration agreement was adhesive and that the fees required to initiate the arbitration were so substantial that plaintiffs were unable to pay them. Imposing such fees would effectively prevent plaintiffs from vindicating their statutory rights.

"Unconscionability is ultimately a question of law for the court." (*Flores, supra,* 93 Cal.App.4th at p. 851, citing Civ. Code, § 1670.5.) However, numerous factual issues may bear on that question. (*Flores,* at p. 851.) Where the trial court's determination of unconscionability is based upon the trial court's resolution of conflicts in the evidence, or on the factual inferences which may be drawn therefrom, we consider the evidence in the light most favorable to the court's determination and review those aspects of the determination for substantial evidence. (*Flores,* at p. 851; *A & M Produce, supra,* 135 Cal.App.3d at p. 489.)

■ The trial court's implicit conclusion that the arbitration clause in the automobile lease is adhesive is supported by substantial evidence. The lease was presented to plaintiffs for signature on a "take it or leave it" basis. Plaintiffs were given no opportunity to negotiate any of the preprinted terms in the lease. The arbitration clause was particularly inconspicuous, printed in eight-point typeface on the opposite side of the signature page of the lease. Gutierrez was never informed that the lease contained an arbitration clause, much less offered an opportunity to negotiate its inclusion within the lease or to agree upon its specific terms. He was not required to initial the arbitration clause. (Cf. *Woodside Homes of Cal., Inc. v. Superior Court* (2003) 107 Cal.App.4th 723, 729 [132 Cal.Rptr.2d 35].) He either had to accept the arbitration clause and the other preprinted terms, or reject the lease entirely. Under these circumstances, the arbitration clause was procedurally unconscionable. (See *Graham v. Scissor-Tail, Inc., supra,* 28 Cal.3d at pp. 817–818 & fns. 10–15.)[8]

■ We conclude that where a consumer enters into an adhesive contract that mandates arbitration, it is unconscionable to condition that process on the consumer posting fees he or she cannot pay.[9] It is self-evident that such a

---

[8] AutoNation contends that alternative sources of vehicles were available to its customers, defeating any showing of procedural unconscionability. However, no evidence was introduced below that other dealers offered automobile lease contracts without similar arbitration provisions. In fact, AutoNation concedes that "the arbitration provision at issue in this appeal is contained, with minor variations, in an extraordinary number of contracts now enforceable in California." Regardless, where, as here, plaintiffs have shown the arbitration agreement is procedurally unconscionable due to *surprise,* plaintiffs need not also demonstrate the agreement was oppressive, i.e., arising from an absence of meaningful choice. (*A & M Produce, supra,* 135 Cal.App.3d at pp. 486, 491; accord, *Armendariz, supra,* 24 Cal.4th at p. 114.) The *Dean Witter* case relied upon by AutoNation is inapposite. In *Dean Witter,* the plaintiffs failed to demonstrate either surprise or oppression. (*Dean Witter Reynolds, Inc. v. Superior Court* (1989) 211 Cal.App.3d 758, 771–772 [259 Cal.Rptr. 789].)

[9] Of course, arbitral costs may be unconscionable for other reasons. For example, a predispute arbitration clause should not impose excessive costs relative to the recovery sought (*Patterson v. ITT Consumer Financial Corp.* (1993) 14 Cal.App.4th 1659, 1666 [18 Cal.Rptr.2d 563] ["In a dispute over a loan of $2,000, it would scarcely make sense to spend a minimum of $850 just to obtain a . . . hearing."].)

provision is unduly harsh and one-sided, defeats the expectations of the nondrafting party, and shocks the conscience. While arbitration may be within the reasonable expectations of consumers, a process that builds prohibitively expensive fees into the arbitration process is not. (See *Patterson v. ITT Consumer Financial Corp., supra,* 14 Cal.App.4th at p. 1665.) To state it simply: it is substantively unconscionable to require a consumer to give up the right to utilize the judicial system, while imposing arbitral forum fees that are prohibitively high. Whatever preference for arbitration might exist,[10] it is not served by an adhesive agreement that effectively blocks every forum for the redress of disputes, including arbitration itself.

The arbitration agreement in this case imposes two general classes of arbitral costs: those that must be paid before any hearing is held and those imposed only after an arbitrator has exercised discretion to allocate them to a party. Here, plaintiffs must pay an initial filing fee and a case service fee, referred to jointly as administrative fees, before any hearing occurs. (AAA rules (2000) rule 51 & Admin. Fees, pp. 4 & 19.)[11] AutoNation points out that the AAA rules provide for the possibility that plaintiffs could be reimbursed for these administrative fees. If no hearing takes place, the case service fee is refunded. (*Id.,* Admin. Fees, p. 19.) Moreover, in the final award, "the arbitrator shall assess the fees, expenses, and compensation" and "may apportion [them] among the parties in such amounts as the arbitrator determines is appropriate." (*Id.,* rule 45(c), p. 13.) Thus, AutoNation argues that plaintiffs may well recover these costs at the conclusion of the arbitration. This possibility, however, provides little comfort to consumers like plaintiffs here, who cannot afford to initiate the arbitration process in the first place. (*Phillips v. Associates Home Equity Services, Inc.* (N.D.Ill. 2001) 179 F.Supp.2d 840, 846–847.)

Plaintiffs presented substantial evidence in the trial court that the administrative fees exceeded their ability to pay. Gutierrez submitted a declaration setting forth plaintiffs' income, expenses and savings, and provided the court with a copy of the AAA rules in effect at the time AutoNation moved to

---

[10] The California Supreme Court has questioned whether arbitration agreements are entitled to favored status. (*Armendariz, supra,* 24 Cal.4th at pp. 126–127 ["[A]lthough we have spoken of a 'strong public policy of this state in favor of resolving disputes by arbitration' [citation], Code of Civil Procedure section 1281 makes clear that an arbitration agreement is to be rescinded on the same grounds as other contracts or contract terms. In this respect, arbitration agreements are neither favored nor disfavored, but simply placed on an equal footing with other contracts."].) The United States Supreme Court, however, has recently reaffirmed its view that the FAA (9 U.S.C. § 2), which contains virtually the same language referenced in *Armendariz,* reflects a strong federal policy favoring arbitration agreements. (*Green Tree, supra,* 531 U.S. at p. 91.)

[11] The AAA rules for the year 2000 can be found at <http://www.adr.org> under the Rules/Archives directory.

compel arbitration.[12] In addition, plaintiffs submitted a declaration from an AAA administrator describing how costs are to be calculated under those rules. The size of the administrative fee is dependent on the size of the claim. According to a schedule included in the rules, a claimant may have to pay more than $15,000 to initiate an arbitration. Here, based on the size of the claim, the administrative fee would be approximately $8,000. In fact, AutoNation has never contested, either in the trial court or this court, Gutierrez's statement in his declaration that the required fees exceed plaintiffs' ability to pay.[13]

Unconscionability is determined as of the time the contract is made. (Civ. Code, § 1670.5.) The flaw in this arbitration agreement is readily apparent. Despite the potential for the imposition of a substantial administrative fee, there is no effective procedure for a consumer to obtain a fee waiver or reduction. A comparison with the judicial system is striking. While imposing far lower mandatory fees, the judicial system provides parties with the opportunity to obtain a judicial waiver of some or all required court fees.

The Government Code prescribes a tripartite means test for litigants seeking such a waiver. (Gov. Code, § 68511.3, subd. (a)(6).) The first two tests automatically exempt a party who receives certain designated governmental benefits (§ 68511.3, subd. (a)(6)(A)) or who falls below a designated poverty limit (§ 68511.3, subd. (a)(6)(B)). Under the third test, courts have discretion to exempt litigants "unable to proceed without using money which is necessary for the use of the litigant or the litigant's family to provide for the common necessaries of life." (§ 68511.3, subd. (a)(6)(C).) The Judicial Council, at the Legislature's direction, has provided a set of forms and rules that supplement the Government Code statute. (See Rules of Court, rules 985, 201.1; see Application for Waiver of Court Fees and Costs, Judicial Council Form No. 982(a)(17).) These rules detail the application form (rule 985(a)), the procedure for determining the application (rule 985(d)), and when a

---

[12] AutoNation's multiple requests for this court to take judicial notice of AAA rules effective July 1, 2003, are denied, as the latter rules are not relevant to any of the dispositive points in this decision. (*Danekas v. San Francisco Residential Rent Stabilization & Arbitration Bd.* (2001) 95 Cal.App.4th 638, 647, fn. 4 [115 Cal.Rptr.2d 694].)

[13] Though it has not disputed plaintiffs' inability to pay the administrative fees required to initiate the proceeding, AutoNation has argued that the evaluation of such fees should be focused elsewhere: on the comparison of *all* prospective costs of arbitration and litigation. As we will discuss in part II.C., below, the California Supreme Court has twice rejected that approach as unduly burdensome and speculative.

On appeal, AutoNation argues for the first time that because plaintiffs seek relief on behalf of a class and as representatives of the public, they may not challenge arbitral fees as beyond their means. AutoNation failed to raise this argument in the trial court, and we deem it waived. (*McDonald's Corp. v. Board of Supervisors* (1998) 63 Cal.App.4th 612, 618 [74 Cal.Rptr.2d 101].)

hearing is required (rule 985(f)). Denial of the application, in whole or in part, "shall include a statement of reasons." (Rule 985(d).)

■ In contrast, the AAA rules adopted in the lease contain one relevant sentence: "The AAA *may*, in the event of extreme hardship on the part of any party, *defer or reduce* the administrative fees." (AAA rules, *supra*, rule 51, p. 1–4, italics added.) The record contains no showing of how this process is begun, or who makes the determination, or what criteria are utilized to decide if fees should be reduced or deferred. (See *Ting v. AT & T* (N.D.Cal. 2002) 182 F.Supp.2d 902, 917, affd. in part & revd. in part (9th Cir. 2003) 319 F.3d 1126.) Even a litigant in possession of the AAA rules would not know how to seek a fee waiver; in fact, the quoted provision apparently provides only for a fee deferral or reduction, not a waiver. To the extent the AAA rules create a procedure to ensure fees are affordable, it is ineffective. (Cf. *Patterson v. ITT Consumer Financial Corp., supra,* 14 Cal.App.4th at pp. 1665–1666.)

We do not mean to suggest that an arbitration agreement requiring the posting of fees to initiate the process must provide a cost-waiver procedure that duplicates the judicial waiver procedure. But the agreement must provide some effective avenue of relief from unaffordable fees. This one does not.

### C. *Severance*

■ The trial court determined that it lacked the ability to sever the costs provision, even if it were the only unconscionable part of the agreement. We disagree. Civil Code section 1670.5, subdivision (a) provides that "[i]f the court as a matter of law finds the contract or any clause of the contract to have been unconscionable at the time it was made the court may refuse to enforce the contract, *or it may enforce the remainder of the contract without the unconscionable clause*, or it may so limit the application of any unconscionable clause as to avoid any unconscionable result." (Italics added.) To assist trial courts in the exercise of their discretion to sever an unconscionable contract clause, *Armendariz* pointed to the law regarding severability of illegal contracts. "Courts are to look to the various purposes of the contract. If the central purpose of the contract is tainted with illegality, then the contract as a whole cannot be enforced. If the illegality is collateral to the main purpose of the contract, and the illegal provision can be extirpated from the contract by means of severance and restriction, then such severance or restriction are appropriate." (*Armendariz, supra,* 24 Cal.4th at p. 124.) Here, the main purpose of the arbitration agreement was not to regulate costs, but to provide a mechanism to resolve disputes. (*Spinetti v. Service Corp. Intern.* (3d Cir. 2003) 324 F.3d 212, 219.) Because the costs provision is collateral to that purpose, severance was available.

*Armendariz* then held that a court should refuse to enforce an arbitration clause permeated with unconscionability. "[M]ultiple defects indicate a systematic effort to impose arbitration on an employee not simply as an alternative to litigation, but as an inferior forum that works to the employer's advantage." (*Armendariz, supra,* 24 Cal.4th at p. 124.) In the trial court, plaintiffs did not argue that any aspect of the arbitration agreement, aside from the costs provision, was unconscionable. Thus, they have waived any argument that multiple defects exist in the arbitration agreement precluding severance. (*McDonald's Corp. v. Board of Supervisor, supra,* 63 Cal.App.4th at p. 618.)

Finally, *Armendariz* concluded that a single unconscionable term could justify a refusal to enforce an arbitration agreement if it were drafted in bad faith, because severing such a provision and enforcing the arbitration agreement would encourage the drafters of such agreements to overreach. "An employer will not be deterred from routinely inserting . . . a deliberately illegal clause into the arbitration agreements it mandates for its employees if it knows that the worst penalty for such illegality is the severance of the clause after the employee has litigated the matter." (*Armendariz, supra,* 24 Cal.4th at pp. 124–125, fn. 13.) We look, principally, at the clarity of the law at the time of the signing of the agreement to determine if the unconscionable provision was drafted in bad faith. (*Ibid.*) On remand, the court will determine if the provision requiring plaintiffs to pay substantial administrative fees was drafted in bad faith and, then, exercise its discretion to sever this provision or not.

II. *The Arbitration of Federal and State Statutory Rights*

A. *The Effective Vindication of Federal Statutory Rights*

Mandatory arbitration agreements often cover employees and consumers raising state or federal statutory claims. Since these statutes depend on private enforcement to achieve their public benefit, courts must be sensitive to aspects of the arbitration process that discourage litigants. (*Morrison v. Circuit City Stores, Inc.* (6th Cir. 2003) 317 F.3d 646, 658 ["[E]mployers should not be permitted to draft arbitration agreements that deter a substantial number of potential litigants from seeking any forum for the vindication of their rights. To allow this would fatally undermine the federal anti-discrimination statutes, as it would enable employers to evade the requirements of federal law altogether."].) The United States Supreme Court has recognized that when a federal statute expressly or impliedly grants a substantive or procedural right to a claimant that would be frustrated by an arbitration agreement, the federal courts must *accommodate* the interests of that statute and the FAA. (*Vimar Seguros y Reaseguros, S. A. v. M/V Sky*

*Reefer* (1995) 515 U.S. 528, 533 [132 L.Ed.2d 462, 115 S.Ct. 2322].) For example, the FAA will not prevail if " 'Congress itself has evinced an intention to preclude a waiver of judicial remedies for the statutory rights at issue.' [Citation.]" (*Gilmer v. Interstate/Johnson Lane Corp.* (1991) 500 U.S. 20, 26 [114 L.Ed.2d 26, 111 S.Ct. 1647], quoting *Mitsubishi, supra,* 473 U.S. at p. 628; see *Wilko v. Swan* (1953) 346 U.S. 427, 433–438 [98 L.Ed. 168, 74 S.Ct. 182] [claims under the Securities Act of 1933 are not arbitrable].) "If such an intention exists, it will be discoverable in the text of the [statute], its legislative history, or an 'inherent conflict' between arbitration and the [statute's] underlying purposes. [Citation.]" (*Gilmer,* at p. 26.) The Supreme Court recently summarized federal law in this area, noting "claims arising under a statute designed to further important social policies may be arbitrated . . . ' "so long as the prospective litigant effectively may vindicate [the] statutory cause of action in the arbitral forum" ' . . . . [Citations.]" (*Green Tree, supra,* 531 U.S. at p. 90.) Thus, a plaintiff may defeat a petition to compel arbitration of a federal statutory claim if he or she can show that arbitration precludes effective vindication of these rights. In *Green Tree,* the court acknowledged that opposition to a petition to compel arbitration may rest on the contention that excessive arbitral fees, required by the agreement, undermine the exercise of federal statutory rights. (*Ibid.*) Subsequent federal cases have consistently so held. (See, e.g., *Livingston v. Associates Finance, Inc.* (2003) 339 F.3d 553, 557; *Musnick v. King Motor Co. of Fort Lauderdale* (11th Cir. 2003) 325 F.3d 1255, 1258; *Morrison v. Circuit City Stores, Inc., supra,* 317 F.3d at p. 659.)

## B. *Private Agreements in Contravention of State Statutory Rights*

The California Supreme Court has manifested a similar concern for the effect of an arbitration agreement on the important social policies promoted by certain state statutes. (*Armendariz, supra,* 24 Cal.4th at pp. 100–101.) Our high court, however, could not rely on the federal accommodation analysis to protect *state* statutory rights; *preemption,* not accommodation, results when a state statute provides a right inconsistent with arbitration. (*Perry v. Thomas* (1987) 482 U.S. 483, 490 [96 L.Ed.2d 426, 107 S.Ct. 2520]; *Southland Corp. v. Keating* (1984) 465 U.S. 1, 5, 16 [79 L.Ed.2d 1, 104 S.Ct. 852].) In *Armendariz,* our Supreme Court followed a different route to reach an almost identical destination. In that case the court held that employee claims under FEHA are arbitrable, but only if the rules governing the arbitration ensure that the process does not serve as a vehicle for waiver of the rights conferred by the statute. (*Armendariz, supra,* 24 Cal.4th at p. 101.) In California, private contracts that violate public policy are unenforceable. (*Id.* at p. 100, citing Civ. Code, §§ 1668, 3513; see *Alternative Systems, Inc. v. Carey* (1998) 67 Cal.App.4th 1034, 1044 [79 Cal.Rptr.2d 567].) Specifically, California courts refuse to uphold contractual terms that require a party to forgo unwaivable statutory rights because this violates the public policy underlying

these rights. (*Little, supra,* 29 Cal.4th at p. 1079.) ██ Thus, a mandatory arbitration agreement cannot undercut unwaivable state statutory rights by, for example, eliminating certain statutory remedies or by erecting excessive cost barriers. (*Armendariz,* at pp. 103–104, 107–113.) Refusing to enforce such agreements is simply an application of "general state law contract principles regarding the unwaivability of public rights to the unique context of arbitration, and accordingly [is] not preempted by the FAA." (*Little,* at p. 1079.)

In their complaint, plaintiffs rely on the CLRA[14] and the VLA,[15] consumer protection statutes enacted for a public purpose and providing certain unwaivable rights. Thus, plaintiffs are entitled to contest the arbitration clause on the basis that it is a private agreement in contravention of public rights—a separate, generally available contract defense not preempted by the FAA.

 C. *State and Federal Methods for Determining When Arbitration Costs are a Barrier to Enforcement of Statutory Rights*

Though the California and United States Supreme Courts agree that arbitral costs may impair the vindication of statutory rights, once again, each has adopted a different method for reaching this determination. In the employment context, in California, *any* cost unique to the arbitral forum is unreasonable when the employee relies on an unwaivable statutory right. "[W]e conclude that when an employer imposes mandatory arbitration as a condition of employment, the arbitration agreement or arbitration process cannot generally require the employee to bear any *type* of expense that the employee would not be required to bear if he or she were free to bring the action in court. This rule will ensure that employees bringing FEHA claims will not be deterred by costs greater than the usual cost incurred during litigation, costs that are essentially imposed on an employee by the employer." (*Armendariz, supra,* 24 Cal.4th at pp. 110–111; accord, *Little, supra,* 29 Cal.4th at pp. 1081–1085.) This so-called categorical test shifts all costs unique to the arbitral forum to the employer, regardless of whether those costs are required to initiate the process or imposed subsequently by the arbitrator. (*Little,* at p. 1084.)

---

[14] The CLRA was enacted for a public purpose and provides unwaivable rights. (*Broughton v. Cigna Healthplans* (1999) 21 Cal.4th 1066, 1073, 1077 [90 Cal.Rptr.2d 334, 988 P.2d 67]; Civ. Code, § 1751.)

[15] The VLA was enacted for a public purpose, curtailing fraud by improving the disclosure and lease terms in the leasing of motor vehicles to consumers. (See *LaChapelle v. Toyota Motor Credit Corp.* (2002) 102 Cal.App.4th 977, 986 [126 Cal.Rptr.2d 32].) It sets forth certain mandatory duties regarding an automobile lease (Civ. Code, §§ 2985.71, 2985.8), while barring certain lease provisions (Civ. Code, § 2986.3). It would violate "public policy—i.e., it would entirely vitiate the public purpose of [the VLA]—if [car dealers] were allowed to exact an exemption from its provisions . . . ." (*Fittante v. Palm Springs Motors, Inc., supra,* 105 Cal.App.4th at p. 718.)

In *Green Tree,* the United States Supreme Court opted for a different approach. (*Green Tree, supra,* 531 U.S. at pp. 90–92.) In that case, the plaintiff sued certain financial institutions for violating the federal Truth in Lending Act. The plaintiff objected to the defendant's petition to compel arbitration, relying on an approach similar to the one adopted in *Armendariz*: the agreement was silent as to the allocation of the costs of arbitration, threatening the plaintiff with a potential liability for costs beyond her ability to pay. (*Green Tree,* at pp. 83–84.) The high court acknowledged that a consumer could not be required to pursue federal statutory rights in an arbitration he or she could not afford, but went on to hold: "[W]e believe that where, as here, a party seeks to invalidate an arbitration agreement on the ground that arbitration would be prohibitively expensive, that party bears the burden of showing the likelihood of incurring such costs. [The plaintiff] did not meet that burden." (*Id.* at pp. 90, 92.) With one exception, every federal circuit court that has considered the issue since *Green Tree* has concluded that it compels a case-by-case analysis of the costs issue, with the party seeking to avoid arbitration bearing the burden to show the likelihood of prohibitive costs. (*Musnick v. King Motor Co. of Fort Lauderdale, supra,* 325 F.3d at p. 1259 [discussing the pre-*Green Tree* split in the circuit courts on whether certain costs provisions in arbitration agreements *automatically* rendered the agreement unenforceable, as well as the post-*Green Tree* decisions by all circuit courts (except the Ninth Circuit) that have considered the issue to apply a case-by-case approach.].)

In *Little,* another employment case, our Supreme Court recognized that the *Armendariz* categorical approach had been rejected in *Green Tree* and described the difference in methodology as "significant." (*Little, supra,* 29 Cal.4th at p. 1084.) "Although *Green Tree* did not elaborate on the kinds of cost sharing arrangements that would be unenforceable, dicta in that case, and several federal cases . . . interpreting it suggest that federal law requires only that employers not impose 'prohibitively expensive' arbitration costs on the employee [citation], and that determination of whether such costs have been imposed are to be made on a case-by-case basis. *Armendariz,* on the other hand, categorically imposes costs unique to arbitration on employers when unwaivable rights pursuant to a mandatory employment arbitration agreement are at stake." (*Little,* at p. 1084.) *Little* rejected the argument that the preemptive effect of the FAA required California to comply with the federal cost sharing standards. (*Little,* at pp. 1084–1085.)

The California Supreme Court has, as yet, left undecided whether *consumers* required to arbitrate unwaivable public rights are protected from having to pay any type of expense that they would not be required to bear if they were free to bring the action in court. (*Cruz v. PacifiCare Health Systems,*

*Inc.* (2003) 30 Cal.4th 303, 317, fn. 3 [133 Cal.Rptr.2d 58, 66 P.3d 1157].)[16] We decline to adopt the *Armendariz* categorical approach that would shift all unique arbitral costs to the nonconsumer party. The determination that arbitral fees in consumer cases are unreasonable should be made on a case-by-case basis, with the consumer carrying the burden of proof. The decision to diverge from *Armendariz* and *Little* and adopt a case-by-case approach does not stem from any disagreement with those decisions, nor could it. (*Auto Equity Sales, Inc. v. Superior Court* (1962) 57 Cal.2d 450, 455 [20 Cal.Rptr. 321, 369 P.2d 937].) Our decision is rooted in part in the conclusion that jobseekers are more likely to face "particularly acute" economic pressure to sign an employment contract with a predispute arbitration provision, "for the arbitration agreement stands between the employee and necessary employment, and few employees are in a position to refuse a job because of an arbitration requirement." (*Armendariz, supra,* 24 Cal.4th at p. 115.) A family in search of a job confronts a very different set of burdens than one seeking a new vehicle. Consumers, who face significantly less economic pressure would seem to require measurably less protection. Primarily, however, our decision is influenced by newly enacted legislation in the consumer arbitration area.

 Code of Civil Procedure section 1284.3, subdivision (b)[17] addresses the imposition of costs by private arbitration firms on consumers and concludes that fees and costs, like the administrative fees in the current case, cannot be imposed on an indigent consumer, as that term is defined by the statute. The section permits such fees to be shifted by the arbitrating entity to a nonconsumer party. This approach is noteworthy for two reasons. First, the Legislature *did not adopt* the *Armendariz* categorical approach and direct that all

---

[16] The Ninth Circuit Court of Appeals has applied the *Armendariz* categorical cost rule in consumer cases. (*Ting v. AT & T, supra,* 319 F.3d at p. 1151; see also *ACORN v. Household Intern., Inc.* (N.D.Cal. 2002) 211 F. Supp.2d 1160, 1173.) However, these federal cases preceded our Supreme Court's decision in *Cruz v. PacifiCare Health Systems, Inc.,* which clarified that application of the *Armendariz* procedural requirements to consumer arbitration has remained an open question. Neither *Ting* nor *ACORN* analyzed the distinctions between employment and consumer arbitration cases, or examined the wisdom of applying the categorical cost rule to consumer cases. Thus, neither informs our analysis of this question.

[17] Code of Civil Procedure section 1284.3, subd. (b)(1) provides: "All fees and costs charged to or assessed upon a consumer party by a private arbitration company in a consumer arbitration, exclusive of arbitrator fees, shall be waived for an indigent consumer. For the purposes of this section, 'indigent consumer' means a person having a gross monthly income that is less than 300 percent of the federal poverty guidelines. Nothing in this section shall affect the ability of a private arbitration company to shift fees that would otherwise be charged or assessed upon a consumer party to a nonconsumer party." (Added by Stats. 2002, ch. 1101, § 1.)

The parties' requests for this court to take judicial notice of excerpts from the legislative history of the statute enacting section 1284.3 are denied because the excerpts are not relevant to our decision in this appeal. (*Danekas v. San Francisco Residential Rent Stabilization & Arbitration Bd., supra,* 95 Cal.App.4th 638, 647, fn. 4.)

administrative fees be paid by nonconsumer parties without regard to the size of the costs or the wealth of the consumer. Second, the Legislature *did adopt* an ability-to-pay approach, which, though limited in this statute to indigents, provides direction for a rule applicable to all consumers faced with arbitral forum fees that are prohibitively high. In *Armendariz* the court signaled its deference to the Legislature in selecting a categorical rule. (*Armendariz, supra,* 24 Cal.4th at pp. 112–113.) In this consumer case, that same deference leads us to adopt a case-by-case determination of affordability: plaintiffs suing under the CLRA, the VLA and like statutes may resist enforcement of an arbitration agreement that imposes unaffordable fees.

lp;6qThe lower federal appellate courts have often relied on a claimant's ability to pay as a factor in determining whether arbitral fees are prohibitively expensive. (*Musnick v. King Motor Co. of Fort Lauderdale, supra,* 325 F.3d at p. 1260; *Bradford v. Rockwell Semiconductor Systems, Inc.* (4th Cir. 2001) 238 F.3d 549, 556; see *Livingston v. Associates Finance, Inc., supra,* 339 F.3d at p. 557.) In addition, these courts commonly require the claimant to demonstrate that the unaffordable arbitration costs exceed the projected overall costs of litigation. This second factor has a superficial appeal: Why, after all, should we refuse to enforce, on costs grounds, an arbitration agreement that will be less expensive than litigation? Our Supreme Court's criticism of this test is apt, however. A determination of the cost differential of litigating and arbitrating a dispute would be "burdensome on the trial court and the parties, [and] likely yield speculative results." (*Armendariz, supra,* 24 Cal.4th at p. 111; accord, *Little, supra,* 29 Cal.4th at pp. 1084–1085.) Even if the calculation is made at the close of arbitration, when its costs are fixed, the costs of a litigation that will never occur is entirely speculative, particularly because no sensible prediction can be made as to whether the case would have been tried or settled.

It is noteworthy that *Green Tree* never expressly mandates a determination of this cost differential. Certainly, an administrative fee that a consumer is unable to pay is, in *Green Tree's* terms, "prohibitively expensive" and precludes vindication of any claim the consumer wishes to press. Further, applying this yardstick does not involve the comparison of arbitration and litigation costs that have not been and may never be incurred. Thus, an ability-to-pay test is consonant with the Legislature's preference for applying such an approach to indigents, without being unduly burdensome or speculative.

In part I.B., we explained that a mandatory arbitration agreement is substantively unconscionable if it requires the payment of unaffordable fees to initiate the process. Such an agreement also undermines public policy where a consumer relies on unwaivable public rights, by effectively barring the consumer from any forum to vindicate those rights. It is a private

agreement in contravention of a public right, an illegal contract (1 Witkin, Summary of Cal. Law (9th ed. 1987) Contracts, §§ 461–464, pp. 411–414), and courts will enforce a contract containing illegal provisions only so long as the unlawful provisions may be severed (*id.*, §§ 431–432, pp. 387–389). As *Armendariz* explained, the rules governing severance in illegal contracts are identical to those for unconscionable contracts. (*Armendariz, supra,* 24 Cal.4th at p. 124; see also, discussion in pt., I.C., *ante.*) In light of our discussion, above, on remand the trial court shall exercise its discretion to determine whether it should sever the costs provision that requires a claimant to post the administrative fee and enforce the arbitration clause.

*Armendariz* had one final reason for protecting employees relying on unwaivable statutory rights from paying any arbitral fees. The court expressed concern that an arbitration process that "poses a significant risk that employees will have to bear large costs to vindicate their statutory right against workplace discrimination chills . . . the exercise of that right." (*Armendariz, supra,* 24 Cal.4th at p. 110.) The categorical test responded to that concern. Plaintiffs argue that they, too, require protection against the deterrent effect of the *possible* imposition of substantial arbitrator fees. The record in this case reveals that such fees average approximately $2,000 per day. Clearly, at the time of a petition to compel arbitration, a consumer is unable to predict the total amount of future arbitration costs or the proportion of those costs the arbitrator will allocate to him or her, and the court may be unable to fashion a prophylactic remedy. However, at the conclusion of the proceeding, when the arbitrator allocates costs, their magnitude is known and the consumer should be protected from an allocation exceeding his or her ability to pay. This protection should eliminate the chilling effect of prospective fees. (Cf. *Morrison v. Circuit City Stores, Inc., supra,* 317 F.3d at p. 681 (dis. opn. of Batchelder, J.).)

The AAA rules that govern this arbitration simply direct the arbitrator to allocate costs among the parties at the time of making the award "as appropriate." (AAA rules, rule 45, p. 13.) No guidelines regulating exercise of this discretion are provided. Our Supreme Court, in an earlier arbitration case involving the CLRA, held that when parties agree to arbitrate statutory claims, it is reasonable to imply an agreement that the fees and costs provided for by the statute will be awarded. (*Broughton v. Cigna Healthplans, supra,* 21 Cal.4th at pp. 1086–1087.) This implied agreement ensures that "parties to the arbitration [will] be able to vindicate their ' " 'statutory cause of action in the arbitral forum.' " ' [Citation.]" (*Armendariz, supra,* 24 Cal.4th at p. 103.) This same goal is furthered by implying an additional agreement, in the absence of express language to the contrary, that unaffordable fees are not to be imposed at the time of the award. Implying this additional

agreement ensures that consumers will not be deterred from pursuing their statutory claims by the fear that the arbitrator will allocate unaffordable fees to them.[18]

This limitation on the arbitrator's discretion is faithful to one other goal articulated by our Supreme Court; the arbitration process is preserved, though made more fair. "The object of the *Armendariz* requirements, however, is not to compel the substitution of adjudication for arbitration, but rather to ensure minimum standards of fairness in arbitration so that employees subject to mandatory arbitration agreements can vindicate their public rights in an arbitral forum. [¶] . . . [¶] Moreover, *Armendariz*'s cost rule does not 'require a judicial forum for the resolution of claims which the contracting parties agreed to resolve by arbitration.' [Citation.] Rather, we simply required that employers pay arbitration forum costs under certain circumstances as a condition of arbitration." (*Little, supra,* 29 Cal.4th at p. 1080; see Code Civ. Proc., § 1284.3, subd. (b) [administrative fees charged to an indigent consumer by a private arbitration company are waived, the arbitration clause is enforced, and the private arbitration company may shift such fees to the nonconsumer party].)

When allocating arbitral costs at the time of the award, the arbitrator will know the magnitude of those costs, as well as the size of the award, the resources available to the consumer to pay costs and whether a class has been certified that can share the costs. These and other relevant facts may be taken into account in the allocation. The consumer will have the burden of showing the extent of his or her ability to pay. The allocation will then be subject to judicial review, on a petition to confirm, correct or vacate the award. (§ 1285 et seq.) Though this review may exceed the narrow scope envisioned by the California Arbitration Act (*Moncharsh v. Heily & Blase* (1992) 3 Cal.4th 1, 6, 11, 33 [10 Cal.Rptr.2d 183, 832 P.2d 899]), expanded judicial review was contemplated by both the United States and California Supreme Courts to ensure that statutory claims can be vindicated in the arbitral forum. (*Shearson/American Express, Inc. v. McMahon, supra,* 482 U.S. at p. 232; *Armendariz, supra,* 24 Cal.4th at pp. 106–107; cf. *Little, supra,* 29 Cal.4th at p. 1089 (conc. & dis. opn. of Baxter, J.).) This case requires no extended discussion of the appropriate standard of review for a cost allocation in the arbitration of statutory claims. However, to facilitate this review, an arbitrator in such a case must provide a written determination that the consumer has the ability to pay the fees and costs allocated by that arbitrator.

---

[18] Compare with Code of Civil Procedure section 1284.3, subdivision (a), which imposes a further limitation on an arbitrator's discretion to allocate costs to a consumer: The arbitrator may not require a consumer who loses the arbitration to pay the fees and costs incurred by the prevailing party.

We recognize that the ability-to-pay test is inconsistent with Code of Civil Procedure section 1284.2, which requires a pro rata sharing of arbitration costs. However, this section is simply a default provision. When parties agree to arbitrate claims under the CLRA, they impliedly agree to the rules necessary to permit a vindication of those statutory claims. Such rules, including the limitation on unreasonable costs set out herein, prevail over the cost allocation prescribed by Code of Civil Procedure section 1284.2. (*Broughton v. Cigna Healthplans, supra,* 21 Cal.4th at pp. 1086–1087.)

III., IV.*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

DISPOSITION

The trial court's denial of the petition to compel arbitration is reversed and the matter remanded to permit that court to reconsider the issue of severance pursuant to the directions provided in this opinion. The parties shall bear their own costs on appeal.

Jones, P. J., and Gemello, J., concurred.

A petition for a rehearing was denied January 8, 2004, and the opinion was modified to read as printed above.

---

* See footnote, *ante,* page 77.