**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

CONNIE A. NAGRAMPA,
            *Plaintiff-Appellant,*

            v.

MAILCOUPS INC.; THE AMERICAN
ARBITRATION ASSOCIATION,
            *Defendants-Appellees.*

No. 03-15955

D.C. No.
CV-03-00208-MJJ

OPINION

Appeal from the United States District Court
for the Northern District of California
Martin J. Jenkins, District Judge, Presiding

Argued and Submitted
December 6, 2004—San Francisco, California

Filed March 21, 2005

Before: Diarmuid F. O'Scannlain, Robert E. Cowen,* and
Carlos T. Bea, Circuit Judges.

Opinion by Judge O'Scannlain

---

*The Honorable Robert E. Cowen, Senior United States Circuit Judge
for the Third Circuit, sitting by designation.

## COUNSEL

Kate Gordon, Trial Lawyers for Public Justice, Oakland, California, argued the cause for appellant; F. Paul Bland, Trial Lawyers for Public Justice, Washington, D.C., and Sanford M. Cipinko, San Francisco, California, were on the briefs.

Glenn J. Plattner, Jenkens & Gilchrist, Los Angeles, California, argued the cause for appellee MailCoups, Inc.; Christine S. Oh, Jenkens & Gilchrist, Los Angeles, California, was on the brief.

Shirley M. Hufstedler and Benjamin J. Fox, Morrison & Foerster, Los Angeles, California, and John S. Warnlof, Lipton, Warnlof & Sumnick, Walnut Creek, California, were on the brief for appellee American Arbitration Association.

## OPINION

O'SCANNLAIN, Circuit Judge:

We must decide who determines whether an agreement containing an arbitration clause is unconscionable: the arbitrator or the court.

I

After working for more than seven years in the direct marketing field, Connie A. Nagrampa entered into an agreement with MailCoups, Inc., to operate one of the company's mail-advertising franchises. The document that the parties signed includes a clause requiring the arbitration of any dispute "arising out of or relating to" the franchise agreement. The clause designates Boston, Massachusetts, as the situs for any arbitration proceedings and provides that costs will be borne equally by each party.[1] Nagrampa claims that the franchise agreement, which she received in the mail and returned to MailCoups with her signature, was non-negotiable, that she was not given

---

[1]The arbitration clause states, in relevant part:

Any controversy or claim arising out of or relating to this Agreement, or any breach thereof, including, without limitation, any claim that this Agreement or any portion thereof is invalid, illegal or otherwise voidable or void, shall be submitted to arbitration before and in accordance with the rules of the American Arbitration Association . . . . The situs of the arbitration proceedings shall be the regional office of the American Arbitration Association which is located in Boston, Massachusetts. The costs of arbitration shall be borne equally by MailCoups and [Nagrampa].

a copy of the agreement for her own records, and that Mail-Coups did not inform her about the arbitration clause or the costs associated with arbitration.

Nagrampa's mail-advertising franchise proved to be a financial failure, and after operating the business for two years, she unilaterally terminated the agreement in September 2000. MailCoups, which claimed that it was still owed $80,000 by Nagrampa, responded by initiating arbitration proceedings against her with the American Arbitration Association ("AAA"). Although Nagrampa initially participated in the prehearing procedures, she discontinued doing so after the arbitrator designated Boston as the location for the arbitration. The proceedings thereafter continued without Nagrampa's participation.

In the meantime, Nagrampa filed suit against MailCoups and the AAA in California state court, alleging that Mail-Coups was liable for common-law misrepresentation and fraud, as well as for violating the California Consumer Legal Remedies Act and California's franchise and unfair competition laws. Nagrampa sought monetary damages from Mail-Coups and an injunction preventing the company from enforcing the arbitration clause against her.

Invoking the parties' diversity of citizenship, MailCoups removed the case to federal court and then moved to compel arbitration and to stay or dismiss the court proceedings. In opposition, Nagrampa argued that the arbitration clause was unenforceable on grounds of unconscionability. The district court concluded that the agreement was valid and granted MailCoups' motion to dismiss.[2] Nagrampa timely appealed.

---

[2]The district court denied MailCoups' motion to compel arbitration because § 4 of the Federal Arbitration Act ("FAA") requires that an arbitration hearing take place in the district in which the motion to compel was filed. *See* 9 U.S.C. § 4 ("The hearing and proceedings . . . shall be within the district in which the petition for an order directing such arbitration is filed."). Relying upon the franchise agreement's designation of Boston as the arbitration forum, the district court concluded that the District of Massachusetts was the proper venue for MailCoups to obtain an order compelling arbitration. MailCoups did not file a cross-appeal.

II

Under California law, the party challenging the validity of an arbitration clause has the burden of proving unconscionability.[3] *See Szetela v. Discover Bank*, 118 Cal. Rptr. 2d 862, 866 (Ct. App. 2002). "[U]nconscionability has both a procedural and a substantive element, the former focusing on oppression or surprise due to unequal bargaining power, the latter on overly harsh or one-sided results." *Armendariz v. Found. Health Psychcare Servs., Inc.*, 6 P.3d 669, 690 (Cal. 2000) (internal quotation marks omitted). Although both elements must be present for a court to exercise its discretion to invalidate an agreement as unconscionable, they need not be present in the same degree. *Id.* Because procedural and substantive unconscionability exist on a sliding scale, "the more substantively oppressive the contract term, the less evidence of procedural unconscionability is required to come to the conclusion that the term is unenforceable, and vice versa." *Id.*

Nagrampa argues that the arbitration clause is procedurally unconscionable because the franchise agreement in which it is found constitutes a contract of adhesion. Before we address the merits of this contention, however, we must determine whether the court or the arbitrator should decide this issue.

---

[3]Throughout both the lower-court and appellate proceedings, the parties have operated on the assumption that the franchise agreement is governed by California law. In so doing, they have neglected to make any mention of the agreement's Massachusetts choice-of-law clause. Notwithstanding this oversight, we will indulge their assumption that California law governs. In light of the ultimate resolution of this appeal, Nagrampa is the only party that could benefit from the application of Massachusetts law, and she has waived any argument to that effect. *See United States v. Hernandez-Valdovinos*, 352 F.3d 1243, 1248 n.4 (9th Cir. 2003) ("Issues that were not presented to the district court generally cannot be raised for the first time on appeal.").

A

**[1]** The Supreme Court's decision in *Prima Paint Corp. v. Flood & Conklin Manufacturing Co.*, 388 U.S. 395 (1967), defines the respective roles of courts and arbitrators in deciding matters of contractual validity. There, Prima Paint Corporation argued that it was not bound by the terms of a consulting agreement because the company had been fraudulently induced to enter into that agreement. *Id.* at 398-99. The Court declined to reach the merits of the fraudulent inducement issue and—relying upon the consulting agreement's arbitration clause—preserved the question for resolution by an arbitrator. *Id.* at 406-07. The Court explained that, where an agreement includes an arbitration clause, a party's claim that it has been fraudulently induced to enter into that agreement must be referred to an arbitrator unless the claim pertains specifically to the making of the arbitration clause. *Id.* at 403-04 ("[I]f the claim is fraud in the inducement of the arbitration clause itself—an issue which goes to the 'making' of the agreement to arbitrate—the federal court may proceed to adjudicate it. But the statutory language [of the FAA] does not permit the federal court to consider claims of fraud in the inducement of the contract generally." (footnote omitted)).

The Court's holding was premised upon the language of § 4 of the FAA, which requires a court to compel arbitration "upon being satisfied that *the making of the agreement for arbitration* or the failure to comply therewith is not in issue," 9 U.S.C. § 4 (emphasis added), as well as upon the general congressional policy that arbitration should be "speedy and not subject to delay and obstruction in the courts," *Prima Paint Corp.*, 388 U.S. at 404. In light of these considerations, "a federal court may consider only issues relating to the making and performance of the agreement to arbitrate" when deciding whether a party is bound by an arbitration clause; matters that concern the larger agreement of which the arbitration clause is a part must be resolved by an arbitrator. *Id.*

Our inquiry into whether Nagrampa and MailCoups entered into an enforceable arbitration agreement must therefore be confined to those issues that pertain specifically to the arbitration clause's validity. Any issues that relate to the making of the franchise agreement as a whole must be referred to an arbitrator.

B

**[2]** Our circuit has until now refrained from expressly addressing *Prima Paint*'s implications for contract-of-adhesion arguments. In *Ticknor v. Choice Hotels International, Inc.*, 265 F.3d 931, 941 (9th Cir. 2001), we did conclude that an arbitration clause in a franchise agreement was unconscionable because the agreement as a whole constituted a contract of adhesion. *Ticknor*, however, provides no analysis of whether a court or an arbitrator should properly decide the contract-of-adhesion question. Because *Ticknor* did not raise or consider the *Prima Paint* issue, it does not inform our inquiry in this case.[4] *See United States v. Johnson*, 256 F.3d 895, 916 (9th Cir. 2001) (en banc) (plurality op. of Kozinski, J.) (a prior decision has binding effect to the extent that "it is clear that a majority of the panel has focused on the legal issue presented by the case before it and made a deliberate decision to resolve the issue"); *cf. United States v. Morales*, 898 F.2d 99, 101-02 (9th Cir. 1990) (holding that a three-judge panel was not foreclosed from deciding whether it had

---

[4]Moreover, those decisions in which we have held that an arbitration agreement itself constituted a contract of adhesion have all concerned stand-alone arbitration agreements, rather than arbitration clauses that were embedded in larger contracts. *Prima Paint* therefore did not bar judicial consideration of these contract-of-adhesion arguments because they pertained specifically to the making of the parties' agreement to arbitrate. *See, e.g.*, *Ferguson v. Countrywide Credit Indus., Inc.*, 298 F.3d 778, 784 (9th Cir. 2002) (holding that a stand-alone arbitration agreement signed by an employee was procedurally unconscionable); *Circuit City Stores, Inc. v. Adams*, 279 F.3d 889, 893 (9th Cir. 2002) (holding that an employer's Dispute Resolution Agreement was a contract of adhesion).

jurisdiction to review a district court's refusal to depart downward from the Sentencing Guidelines where a previous panel had reached the merits of such a case without raising or considering the reviewability issue).

**[3]** Although we have not until now addressed the issue, several of our sister circuits have squarely held that *Prima Paint* requires the arbitrator to determine whether an agreement containing an arbitration clause is a contract of adhesion. In *Rojas v. TK Communications, Inc.*, 87 F.3d 745, 749 (5th Cir. 1996), for example, the Fifth Circuit refused to decide whether an employment agreement that included an arbitration clause was a contract of adhesion. The court explained that the

> claim that the employment agreement is an unconscionable contract of adhesion is an attack on the formation of the contract generally, not an attack on the arbitration clause itself. Because [the] claim relates to the entire agreement, rather than just the arbitration clause, the FAA requires that [the] claims be heard by an arbitrator.

*Id.* (footnote omitted); *see also JLM Indus., Inc. v. Stolt-Nielsen SA*, 387 F.3d 163, 170 (2d Cir. 2004) ("According to the principle announced in *Prima Paint Corp. v. Flood & Conklin Manufacturing Co.*, the issue of whether the [parties' agreement]—as opposed to the arbitration clause alone—is a contract of adhesion is itself an arbitrable matter not properly considered by a court." (citation omitted)); *Burden v. Check into Cash of Ky., LLC*, 267 F.3d 483, 492 n.3 (6th Cir. 2001) ("an additional claim of Plaintiffs, that the arbitration agreements are unenforceable because they were contained in contracts of adhesion, also does not concern the making of the arbitration agreements because the claim does not attack the arbitration clause, separate from the underlying loan agreements").

**[4]** In accordance with the convincing analysis of our sister circuits, we hold that the arbitrator must decide whether an agreement that contains an arbitration clause is a contract of adhesion because this issue pertains to the making of the agreement as a whole and not to the arbitration clause specifically. This conclusion not only comports with the holding of *Prima Paint* but also gives effect to "Congress's intent to move the parties to an arbitrable dispute out of court and into arbitration as quickly and easily as possible." *Bushley v. Credit Suisse First Boston*, 360 F.3d 1149, 1153 (9th Cir. 2004) (internal quotation marks omitted). It accordingly rests within the province of the arbitrator—and not within the judicial purview—to resolve Nagrampa's claim that the franchise agreement is a contract of adhesion.

C

In addition to proffering her contract-of-adhesion argument, Nagrampa also contends that the arbitration clause is procedurally unconscionable because it is found on the twenty-fifth page of the thirty-page franchise agreement and she was not informed about the clause or the costs of arbitration. *Prima Paint* does not preclude us from considering these additional procedural unconscionability arguments because they pertain specifically to the arbitration clause's validity. 388 U.S. at 404.

**[5]** Nagrampa does not cite any authority for the proposition that MailCoups was required to apprise her of the existence of the arbitration clause or the costs associated with arbitration. Indeed, California case law establishes that Mail-Coups had no such obligation. In *Brookwood v. Bank of America*, 53 Cal. Rptr. 2d 515, 519 (Ct. App. 1996), for example, an employee sought to obtain a judicial forum for her employment discrimination suit by claiming that she was not aware that her new-employee paperwork included an arbitration clause. The court rejected the employee's attempt to evade arbitration and explained that she "was bound by the

provisions of the [arbitration] agreement regardless of whether [she] read it or [was] aware of the arbitration clause when [she] signed the document." *Id.* at 520 (internal quotation marks omitted; alterations in original); *see also id.* ("Reasonable diligence requires the reading of a contract before signing it. A party cannot use his own lack of diligence to avoid an arbitration agreement." (internal quotation marks omitted)).

**[6]** Here, MailCoups sent the franchise agreement to Nagrampa and asked her to return it with her signature. Nagrampa—an experienced businessperson who had worked for more than seven years in the direct marketing field—had ample opportunity to read the arbitration clause and to consider its implications. This case is thus appreciably different from those in which an inexperienced consumer was pressured to sign an agreement without being afforded an opportunity to read or comprehend the fine print. *See, e.g.*, *Gutierrez v. Autowest, Inc.*, 7 Cal. Rptr. 3d 267, 276 (Ct. App. 2003) (holding that an arbitration clause in an automobile lease was procedurally unconscionable where the clause was "particularly inconspicuous," it was "printed in eight-point typeface[ ] on the opposite side of the signature page," and the consumer was not informed of the clause's existence). Nagrampa's failure to read the arbitration clause—or to consult a lawyer about its ramifications—does not excuse her from complying with its terms.

III

**[7]** Because Nagrampa's contract-of-adhesion argument is a matter for the arbitrator to decide—and because she is bound by the arbitration clause even if she failed to read it— she has not met her burden of proving that the arbitration agreement is procedurally unconscionable. Accordingly, we

need not reach the question of whether the agreement is substantively unconscionable.[5]

**AFFIRMED.**

---

[5]MailCoups' request for sanctions under Fed. R. App. P. 38 is denied because such a request must be set forth in "a separately filed motion," rather than in an appellate brief. Even if the request had been properly presented, however, it would have been denied on the merits because it cannot be said that Nagrampa's "arguments of error are wholly without merit." *In re George*, 322 F.3d 586, 588 (9th Cir. 2003) (per curiam) (internal quotation marks omitted).

Because we do not reach Nagrampa's substantive unconscionability arguments, we deny as moot the AAA's motion to strike and its request for judicial notice, as well as Nagrampa's motion requesting judicial notice.