Filed 4/8/13  Mercedes-Benz Financial Services v. Okudan CA4/1

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## COURT OF APPEAL, FOURTH APPELLATE DISTRICT

## DIVISION ONE

## STATE OF CALIFORNIA

| | |
|---|---|
| MERCEDES-BENZ FINANCIAL SERVICES USA, LLC, | D061669 |
| Plaintiff, Cross-defendant and Appellant, | |
| v. | (Super. Ct. No. 37-2010-00093994-CU-CL-CTL) |
| OZZY O. OKUDAN, | |
| Defendant, Cross-complainant and Respondent. | |

APPEAL from an order of the Superior Court of San Diego County, Luis R. Vargas, Judge.  Reversed with directions.

Mercedes-Benz Financial Services USA, LLC (Financial) appeals an order

denying its petition to compel arbitration of its lawsuit with Ozzy Okudan.  Financial

contends the court erred by determining the arbitration clause in an automobile purchase contract was unconscionable and therefore unenforceable. We reverse with directions.[1]

FACTUAL AND PROCEDURAL BACKGROUND

In August 2007, Okudan purchased a 2006 BMW M-5 from a Mercedes Benz dealer under an installment sale contract requiring Okudan to make monthly payments. The dealer later assigned the contract to Financial. The total price of the vehicle was approximately $72,000.

In December 2008, Financial repossessed the vehicle based on its claim that Okudan failed to make the required monthly payments. Financial provided Okudan with a statutory notice of intent to sell the vehicle (NOI) that included Okudan's reinstatement rights. Financial then sold the vehicle at an auction for $19,000.

In June 2010, Financial filed a superior court action against Okudan seeking to collect the deficiency balance owed on the vehicle, alleged to be $64,239.85. About one year later, in June 2011, Okudan filed a cross-complaint seeking declaratory relief in the form of an order that Financial's NOI did not comply with Civil Code section 2983.2 and therefore Financial was precluded from obtaining a deficiency balance.

About five months later, in November 2011, Okudan filed an amended cross-complaint seeking to represent a class of California residents "to whom [Financial] sent

---

[1] Many of the same legal issues in this case are before the California Supreme Court in two pending cases. (*Sanchez v. Valencia Holding Co.*, LLC (2011) 201 Cal.App.4th 74, review granted Mar. 21, 2012, S199119 (*Sanchez*); *Goodridge v. KDF Automobile Group, Inc.* (2012) 209 Cal.App.4th 325, review granted Dec. 19, 2012 (*Goodridge*) [briefing deferred pending *Sanchez case*].) This case involves the same form contract that was at issue in the *Sanchez* and *Goodridge* cases.

2

NOIs . . . whose vehicles were repossessed by or voluntarily surrendered to [Financial], and against whom [Financial] has asserted a deficiency claim."  Okudan added numerous causes of action, including for violation of the Rosenthal Fair Debt Collections Practices Act, Consumer Credit Reporting Agencies Act, Consumer Legal Remedies Act (CLRA), Fair Credit Reporting Act, and Unfair Competition Law (UCL) based on a violation of the Rees-Levering Act.  (See Civ. Code, §§ 1750 et seq., 1785.1 et seq., 1788 et seq.; Bus. & Prof. Code, § 17200; 15 U.S.C. § 1681 et seq.)

Within several days, Financial moved to compel arbitration under an arbitration clause in Okudan's installment sale contract.  Financial attached a digitally-reduced copy of the sales contract, in which the terms were essentially illegible.

Okudan opposed the arbitration request, arguing:  (1) Financial did not meet its burden to produce evidence of a valid and enforceable arbitration clause; (2) Financial waived its right to seek arbitration by filing the lawsuit, filing a summary judgment motion, and propounding written discovery; and (3) the arbitration provision was unconscionable.

In support of his unconscionability argument, Okudan presented evidence that the sales contract was the "Reynolds & Reynolds, 553-CA-ARB" form document widely used in the industry.  According to this evidence, the arbitration clause contained in the parties' agreement read as follows:

"ARBITRATION CLAUSE
PLEASE REVIEW-IMPORTANT-AFFECTS YOUR LEGAL RIGHTS

3

"1. EITHER YOU OR WE MAY CHOOSE TO HAVE ANY DISPUTE BETWEEN US DECIDED BY ARBITRATION AND NOT IN COURT OR BY JURY TRIAL.
"2. IF A DISPUTE IS ARBITRATED, YOU WILL GIVE UP YOUR RIGHT TO PARTICIPATE AS A CLASS REPRESENTATIVE OR CLASS MEMBER ON ANY CLASS CLAIM YOU MAY HAVE AGAINST US INCLUDING ANY RIGHT TO CLASS ARBITRATION OR ANY CONSOLIDATION OF INDIVIDUAL ARBITRATIONS.
"3. DISCOVERY AND RIGHTS TO APPEAL IN ARBITRATION ARE GENERALLY MORE LIMITED THAN IN A LAWSUIT, AND OTHER RIGHTS THAT YOU AND WE WOULD HAVE IN COURT MAY NOT BE AVAILABLE IN ARBITRATION.

"Any claim or dispute, whether in contract, tort, statute or otherwise (including the interpretation and scope of this Arbitration Clause, and the arbitrability of the claim or dispute), between you and us or our employees, agents, successors or assigns, which arises out of or relates to your credit application, purchase or condition of this vehicle, this contract or any resulting transaction or relationship (including any such relationship with third parties who do not sign this contract) shall, at your or our election, be resolved by neutral, binding arbitration and not by a court action. If federal law provides that a claim or dispute is not subject to binding arbitration, this Arbitration Clause shall not apply to such claim or dispute. Any claim or dispute is to be arbitrated by a single arbitrator on an individual basis and not as a class action. You expressly waive any right you may have to arbitrate a class action. You may choose one of the following arbitration organizations and its applicable rules: the National Arbitration Forum . . . . (www.arbforum.com), the American Arbitration Association . . . (www.adr.org), or any other organization that you may choose subject to our approval.  You may get a copy of the rules of these organizations by contacting the arbitration organization or visiting its website.
"Arbitrators shall be attorneys or retired judges and shall be selected pursuant to the applicable rules. The arbitrator shall apply governing substantive law in making an award.  The arbitration hearing shall be conducted in the federal district in which you reside. . . .  We will advance your filing, administration, service or case management fee and your arbitrator or hearing fee all up to a maximum of $2500, which may be reimbursed by decision of the arbitrator at the arbitrator's discretion.  Each party shall be responsible for its own attorney, expert and other fees, unless awarded by the arbitrator under applicable law.  If the chosen arbitration organization's rules conflict with this Arbitration Clause, then the provisions of this Arbitration Clause shall control.  The arbitrator's award shall be *final and binding* on all parties, *except that in the event the arbitrator's award for a party is $0 or against a party is in excess of $100,000, or includes an award of injunctive relief against a party, that party may request a new arbitration under the rules of the arbitration organization by a three-arbitrator panel. The appealing party* requesting new arbitration *shall be responsible for the filing fee and other arbitration costs subject to a final determination by the arbitrators of a fair apportionment of costs*.  Any arbitration under this Arbitration Clause shall be governed

4

by the Federal Arbitration Act (9 U.S.C. § 1 et. seq.) and not by any state law concerning arbitration.

"You and we retain any rights to *self-help remedies, such as repossession. You and we retain the right to seek remedies in small claims court for disputes or claims within that court's jurisdiction, unless such action is transferred, removed or appealed to a different court. Neither you nor we waive the right to arbitrate by using self-help remedies or filing suit. Any court having jurisdiction may enter judgment on the arbitrator's award. This Arbitration Clause shall survive any termination, payoff or transfer of this contract. If any part of this Arbitration Clause, other than waivers of class action rights, is deemed or found to be unenforceable for any reason, the remainder shall remain enforceable. *If a waiver of class action rights is deemed or found to be unenforceable for any reason in a case in which class action allegations have been made, the remainder of this Arbitration Clause shall be unenforceable.*" (Italics added.)

The evidence showed the entire sales agreement was contained on a single sheet of paper that is about 26 inches long with numerous provisions close together on the front and back side. The arbitration provision is located on the bottom of the back side and is outlined in black lines, as are several other provisions. The provision is printed in at least 8-point type. Okudan signed the bottom of the front side and initialed the contract on several places on the front side, but there are no signatures or initials by Okudan on the back of the contract.

Okudan also presented his declaration in which he described his execution of the sales agreement. The declaration states in part:

> "When I was asked to sign the purchase documents, the dealer representative never actually gave me the sales contract to read. He spent no more than five to ten minutes having me sign the purchase contract and several other sales documents. The sales person did not explain the contract to me prior to signing it, and did not discuss anything on the back of the contract. I could not read the back of the contract because he never turned it over. I was not asked to sign anywhere on the back of the contract. I was not told there was additional language on the back. The sales person did not turn the contract over at all during the signing.

. . . The sales person held the contract flat on the desk with one hand and with the other pointed to the various places on the front of the contract for me to sign.  The way he held his hands on the contract kept me from reading much of the language on the front of the contract.  In addition, there were probably 7 or 8 other documents to be signed.  No one at the dealership ever discussed an arbitration clause with me prior to the sale.  I did not know there was any arbitration clause until my attorney told me [Financial] is trying to force arbitration.  . . .  [¶] The contract was presented to me on a take it or leave it basis.

. . . I have never heard of the National Arbitration Forum or the American Arbitration Association.  I am unfamiliar with their rules and was never given a copy of the rules.  I cannot afford to pay arbitration fees.  If I had been told that I would have to forfeit my right to go to court I would not have bought the vehicle.  I no longer have my copy of the contract because it was misplaced when I moved in 2009."

Based on this evidence, Okudan argued the court should deny Financial's motion to compel because the arbitration agreement was identical to the arbitration clause found procedurally and substantively unconscionable by the *Sanchez* court (which had not yet been granted review by the California Supreme Court).  (See fn. 1, *ante*.)  The *Sanchez* court had found four portions of the arbitration clause to be unconscionable:  (1) providing the parties with the right to a second arbitration before a three-arbitrator panel if the award exceeds $100,000; (2) providing the parties with the right to a second arbitration before a three-arbitrator panel if the award includes injunctive relief; (3) the

requirement that the appealing party *advance* all arbitration costs; and (4) the exemption for self-help remedies (e.g., repossession).[2]

In reply, Financial argued *Sanchez* was wrongly decided and the agreement was neither procedurally nor substantively unconscionable, and in any event severance is the proper remedy. Financial also argued it did not waive its arbitration right, noting that it filed its motion immediately after Okudan filed the amended cross-complaint adding the class allegations. Financial asserted that "the filing of a class action cross-complaint is in itself a dramatic change in the nature and scope of the case justifying [Financial] to change strategy and move to compel arbitration," and Okudan did not suffer any prejudice from the delayed motion.

After considering the parties' submissions and conducting a hearing, the court denied Financial's motion to compel arbitration based on its conclusion that the provision was substantively and procedurally unconscionable under *Sanchez*. With respect to substantive unconscionability, the court followed the *Sanchez* court's holding that the four challenged portions of the arbitration provision were unfairly one-sided and oppressive. The trial court also denied Financial's severance request, stating that "consistent with the holding in *Sanchez*, . . . the arbitration provision is permeated with unconscionability, which cannot be cured by severing the offensive provisions from the

---

2    Although the arbitration clause included a class action waiver, Okudan did not argue the waiver was unconscionable. (See *AT&T Mobility LLC v. Concepcion* (2011) __ U.S. __ [131 S.Ct. 1740] (*Concepcion*).)

7

Contract."  The court also overruled Okudan's evidentiary objections and did not reach Okudan's waiver arguments.

Financial filed a notice of appeal on March 19, 2012.  Two days later, the California Supreme Court granted a petition for review of the *Sanchez* decision.  (See fn. 1, *ante*.)  While Financial's appeal was pending, this court filed the *Goodridge* decision (see fn. 1, *ante*), in which we held that an identical arbitration provision in a vehicle purchase contract was procedurally and substantively unconscionable, adopting much of *Sanchez*'s analysis.  After Okudan filed his respondent's brief on appeal, the California Supreme Court granted a petition for review in the *Goodridge* case and held the case pending the outcome of *Sanchez*.  (See fn. 1, *ante*.)

Several federal courts (in unpublished decisions) have found identical arbitration provisions in vehicle sale contracts to be unconscionable.  (See *Trompeter v. Ally Financial, Inc.* (N.D.Cal., June 1, 2012, No. C 12-00392 CW) 2012 WL 1980894; *Lau v. Mercedes-Benz USA, LLC* (N.D.Cal., Jan. 31, 2012, No. CV 11-1940 MEJ) 2012 WL 370557 (*Lau*); see also *Mance v. Mercedes-Benz USA* (N.D.Cal., Sept. 28, 2012, No. CV 11-03717 LB), 2012 WL 4497369 [substantively but not procedurally unconscionable]), and at least one California Court of Appeal (in a published decision) has rejected an unconscionability challenge (*Flores v. West Covina Auto Group, LLC* (2013) 212 Cal.App.4th 895).

DISCUSSION

## I. *Applicable Legal Principles*

The parties' agreement is expressly governed by the Federal Arbitration Act (FAA), which reflects a strong federal policy favoring the enforcement of arbitration agreements. Under the FAA, arbitration agreements "shall be valid, irrevocable, and enforceable save upon such grounds as exist at law or in equity for the revocation of any contract." (9 U.S.C. § 2.) State laws inconsistent with the federal act's provisions and objectives are preempted. (*Perry v. Thomas* (1987) 482 U.S. 483, 489.)

In 2011, the United States Supreme Court reiterated the strong public policy favoring the enforceability of arbitration agreements under the FAA and reaffirmed that a state law contract defense is unenforceable if it applies only to arbitration or if it derives its meaning from the fact that an agreement to arbitrate is at issue. (See *Concepcion, supra*, 131 S.Ct. at pp. 1745-1746.) The court further made clear that the principal purpose of the FAA is to " 'ensur[e] that private arbitration agreements are enforced according to their terms.' " (*Id.* at p. 1748.) However, the Supreme Court also recognized that state laws regarding arbitration are enforceable to the extent they are not in conflict with the FAA. (*Ibid.*; see *Doctor's Associates, Inc. v. Casorotto* (1996) 517 U.S. 681, 687; *Truly Nolen of America v. Superior Court* (2012) 208 Cal.App.4th 487, 498.)

One basis for revoking a contract under California law is a showing that the contract is unconscionable. This unconscionability defense is codified in Civil Code section 1670.5, subdivision (a), which states: "If the court as a matter of law finds the

9

contract or any clause of the contract to have been unconscionable at the time it was made the court may refuse to enforce the contract, or it may enforce the remainder of the contract without the unconscionable clause . . . ."

Following *Concepcion*, the California Supreme Court reaffirmed that this statutory unconscionability defense " 'may be applied to invalidate arbitration agreements without contravening' the FAA." (*Pinnacle Museum Tower Assn. v. Pinnacle Market Development (US), LLC* (2012) 55 Cal.4th 223, 246 (*Pinnacle*).) The *Pinnacle* court also reiterated well-settled principles governing the analysis of unconscionability claims under California law: "Unconscionability consists of both procedural and substantive elements. The procedural element addresses the circumstances of contract negotiation and formation, focusing on oppression or surprise due to unequal bargaining power. [Citations.] Substantive unconscionability pertains to the fairness of an agreement's actual terms and to assessments of whether they are overly harsh or one-sided. [Citations.] A contract term is not substantively unconscionable when it merely gives one side a greater benefit; rather, the term must be 'so one-sided as to "shock the conscience." ' [Citation.] [¶] The party resisting arbitration bears the burden of proving unconscionability. [Citations.] Both procedural unconscionability and substantive unconscionability must be shown, but 'they need not be present in the same degree' and are evaluated on ' "a sliding scale." ' [Citation.] '[T]he more substantively oppressive the contract term, the less evidence of procedural unconscionability is required to come to the

conclusion that the term is unenforceable, and vice versa.' [Citation.]" (*Id.* at pp. 246-247.)[3]

Unconscionability is ultimately a question of law, which we review de novo when no meaningful factual disputes exist as to the evidence. (*Parada v. Superior Court* (2009) 176 Cal.App.4th 1554, 1567.) We review the court's resolution of disputed facts for substantial evidence. (*Ibid.*) When the trial court makes no express findings, we infer that it made every implied factual finding necessary to support its order and review those implied findings for substantial evidence. (*Ibid.*)

## II. *Procedural Unconscionability*

Procedural unconscionability requires oppression or surprise. " 'Oppression arises from an inequality of bargaining power that results in no real negotiation and an absence of meaningful choice.' [Citation.] Surprise is defined as ' "the extent to which the supposedly agreed-upon terms of the bargain are hidden in the prolix printed form drafted by the party seeking to enforce the disputed terms." ' [Citation.]" (*Gatton v. T-Mobile USA, Inc.* (2007) 152 Cal.App.4th 571, 581, fn. omitted.)

---

3      To the extent Financial argues these standards are no longer applicable after *Concepcion, supra*, 131 S.Ct. 1740, we reject this contention. Although the *Pinnacle* court did not specifically discuss the *Concepcion* decision on this issue, the *Pinnacle* court's application of California's existing unconscionability standards to an arbitration agreement establishes the continuing validity of these rules. In any event, *Concepcion*'s impact on this state's unconscionability rules is before the California Supreme Court in the *Sanchez* case. (See fn. 1, *ante*.) Until our high court provides different standards, we adhere to settled rules for enforcing arbitration agreements. (See *Lau, supra*, 2012 WL 370557, p. *7 ["*Concepcion* does not affect the traditional analysis used to determine whether an arbitration clause is unconscionable"].)

Viewing the factual record in the light most favorable to Okudan, both aspects of procedural unconscionability are present in this case. The purchase agreement is contained on a lengthy two-sided preprinted form that is about two feet long, and the arbitration provisions are on the back side on the bottom of the form. Okudan signed only the front of the document. He also placed his initials next to several clauses, but each of those clauses was on the front of the document. Okudan submitted a declaration stating he had no opportunity to read the contract or negotiate the terms, and the contract was presented to him on a "take it or leave it basis." He also said he was unaware of the arbitration clause, and the salesperson did not call his attention to, or explain, the provision. Okudan said the salesperson "held the contract flat on the desk with one hand and with the other pointed to the various places on the front of the contract for me to sign. The way he held his hands on the contract kept me from reading much of the language on the front of the contract."

These facts, together with our review of the entire contract, supports that there was a lack of negotiation or meaningful choice before Okudan signed the contract. (See *Gutierrez v. Autowest, Inc.* (2003) 114 Cal.App.4th 77, 89 (*Gutierrez*); *Szetela v. Discover Bank* (2002) 97 Cal.App.4th 1094, 1100; *Lau, supra*, 2012 WL 370557, p. *8.)

Financial argues that Okudan could not have been "surprised" by the arbitration requirement because a clause on the front side of the contract "alerted" him to the arbitration provision on its reverse side. Specifically, towards the bottom of the front side of the form and on the far right of the printed page, the following provision appears in capital letters (although in substantially smaller type than what appears here):

12

"YOU AGREE TO THE TERMS OF THIS CONTRACT. YOU CONFIRM THAT BEFORE YOU SIGNED THIS CONTRACT, WE GAVE IT TO YOU, AND YOU WERE FREE TO TAKE IT AND REVIEW IT. YOU ACKNOWLEDGE YOU HAVE READ BOTH SIDES OF THIS CONTRACT, INCLUDING THE ARBITRATION CLAUSE ON THE REVERSE SIDE. BEFORE SIGNING BELOW, YOU CONFIRM THAT YOU RECEIVED A COMPLETELY FILLED-IN COPY WHEN YOU SIGNED IT."

The trial court did not err in finding this clause would not have notified a reasonable consumer of the existence of the arbitration clause. There is no provision for Okudan's signature or initials under or adjacent to that language. Rather, his signature appears on the opposite side of the page under a larger, boxed-in provision regarding the lack of a cooling-off period that appears to the left of the quoted language in the two-thirds width of the page adjacent to the left margin. Further, based on the manner in which the salesperson held his hand on the contract while Okudan was placing the required signature/initials, the trial court had a reasonable basis to conclude that Okudan did not have a fair opportunity to read this clause in a careful manner that would have provided sufficient information to refer Okudan to the arbitration provision on the back side.

We recognize that automobile dealers are statutorily mandated to include copious amounts of information in a sales contract and the contract here met the legal requirements regarding content and print size. (See Civ. Code, §§ 2982, 2981.9.) However, there is no statutory requirement that the arbitration provision be placed on the bottom of the back of the form without any provision for a consumer signature or initials to ensure the buyer has read and/or understood the provision. Because the arbitration

13

provision was contained on the back of the contract containing dense contractual language and there was no evidence that Okudan knew of the provision or would have been reasonably alerted to this clause before signing and consenting to the agreement, the court's finding of surprise was supported.[4]

Based on the totality of the circumstances, there was a moderate degree of procedural unconscionability in this case. However, this is not the end of the analysis because a contract is unconscionable only if it is both procedurally and substantively unconscionable.

### III. *Substantive Unconscionability*

Financial contends the court erred in finding four portions of the arbitration provision were substantively unconscionable: three concern the finality of the arbitrator's decision and one concerns the parties' rights to seek relief outside the arbitration process thorough self-help remedies or small claims court.

We conclude Financial's contention has merit with respect to the self-help and small claims court remedies. As explained, there is nothing unfair or unreasonable in allowing the parties to retain their rights to these remedies outside the arbitration process.

But we conclude the remaining challenged provisions pertaining to the finality of the arbitration decision are moderately unconscionable because they primarily benefit the economically-stronger party and substantially burden the weaker party. Viewing together

---

[4]    In analyzing procedural unconscionability, we do not find material the fact that the contract did not attach the specific arbitral rules that would govern arbitration. The omission of these rules does not contribute to our unconscionability finding.

14

the moderate levels of procedural and substantive unconscionability, we determine these provisions cannot be enforced. However, because the objectionable provisions are contained solely in two sentences of the lengthy arbitration agreement and pertain to a single part of the arbitration clause (concerning the finality of the arbitration award), they can potentially be severed from the remaining portions of the agreement. We thus remand for the trial court to exercise its discretion on the severance issue without including the erroneous determination regarding the self help/small claims provisions.

### A. *Summary of Substantive Unconscionability Standard*

"Substantive unconscionability pertains to the fairness of an agreement's actual terms and to assessments of whether they are overly harsh or one-sided. [Citations.] A contract term is not substantively unconscionable when it merely gives one side a greater benefit; rather, the term must be 'so one-sided as to "shock the conscience." ' [Citation.]" (*Pinnacle, supra*, 55 Cal.4th at p. 246.) Moreover, even though a provision is unduly one-sided, it may not be unconscionable when the party who is imposing the provision offers a legitimate business justification based on " 'business realities.' " (*Armendariz v. Foundation Health Psychcare Services, Inc.* (2000) 24 Cal.4th 83, 117-118.) However, " 'unless the "business realities" that create the special need for such an advantage are explained in the contract itself,' " they " 'must be factually established.' " (*Id.* at p. 117.) In determining substantive unconscionability, we are required to consider the circumstances at the time the agreement was executed, and not the particular dispute between the parties. (Civ. Code, § 1670.5; *American Software, Inc. v. Ali* (1996) 46 Cal.App.4th 1386, 1391.)

15

In our prior *Goodridge* decision, we expressly declined to apply the "shock the conscience" standard in examining whether the arbitration provision was unconscionable. (See fn. 1, *ante*.)  However, the California Supreme Court has since made clear that this standard governs the substantive unconscionability analysis.  (*Pinnacle, supra*, 55 Cal.4th at p. 246.)  Following *Pinnacle*, we apply the "shock the conscience" standard and recognize that it imposes a significant burden on a party seeking to prevail on a substantive unconscionability claim.  Thus, our analysis in this case differs somewhat from our analysis in the *Goodridge* case.

### B.  *Self-Help and Small Claims Remedies*

The final paragraph of the arbitration provision begins:  "You and we retain any rights to self-help remedies, such as repossession.  You and we retain the right to seek remedies in small claims court for disputes or claims within that court's jurisdiction, unless such action is transferred, removed or appealed to a different court.  Neither you nor we waive the right to arbitrate by using self-help remedies or filing suit."

Okudan contends this provision, in practical effect, benefits only Financial because car dealers/creditors are the only parties that use self-help remedies (i.e., repossession).  We agree repossession is a common recourse for sellers against a defaulting buyer, and buyers do not have an equivalent self-help remedy.  However, the exclusion of this remedy from the scope of arbitration is not oppressive or unfair because self-help remedies are, by definition, outside the judicial system.  In other words, the fact that the buyer has no corresponding self-help remedy is not a consequence of the arbitration agreement.  Under the applicable statutes and the parties' contract, a seller has

16

the right to repossess a vehicle when the buyer defaults and required payments are not being made. (See Civ. Code, § 2983.3, subd. (b).) The creditor may exercise its rights to this self-help remedy without bringing this claim to court. There is nothing harsh or one-sided about exempting repossession from arbitration when it is exempt from the judicial process. To the extent the seller/creditor seeks to obtain a deficiency after the repossession and sale, this is not a self-help remedy, and the seller/creditor would be required to resolve that claim in the arbitration process.

In this respect, Okudan's reliance on *Flores v. Transamerica HomeFirst, Inc*. (2001) 93 Cal.App.4th 846 is misplaced. In *Flores*, the plaintiffs obtained a reverse mortgage on their home from the defendant lender. (*Id.* at p. 849.) The loan documents contained a broad arbitration clause requiring arbitration of all disputes between the parties, *except* the agreement preserved the lender's right to "foreclose against the Property (*whether judicially or non-judicially . . .* ), to exercise self-help remedies *such as set-off*, or to obtain injunctive relief for the appointment of a receiver." (*Id.* at p. 850, italics added.) The court found this broad exclusion unconscionable because the lender was not required to bring any of its claims to arbitration and the "clear implication is that [the lender] has attempted to maximize its advantage by avoiding arbitration of its own claims." (*Id.* at p. 855.)

*Flores* does not support Okudan's argument that the self-help exclusion renders the arbitration clause unconscionable. The *Flores* agreement exempted from arbitration not only claims outside the judicial process (nonjudicial foreclosure) but also claims that must be brought in court (judicial foreclosure). Thus, the broad exclusion affirmatively

17

provided the lender with the unilateral opportunity to bring certain of its claims in court, even during the pendency of the arbitration process. The exemption for true self-help remedies (i.e., repossession) does not have a similar effect because the remedy is by definition already outside the judicial process.

Moreover, the recent *Pinnacle* decision creates some doubt as to the continuing validity of the *Flores* court's reasoning. (*Pinnacle, supra*, 55 Cal.4th at pp. 246-250.) In *Pinnacle,* the court rejected the argument that an arbitration provision is necessarily unconscionable merely because it requires the homeowners association and property owners to arbitrate all construction disputes with the developer without requiring the developer to arbitrate any of its nonconstruction-related claims against these parties. (*Id.* at pp. 248-249.) In so concluding, the court reiterated that "arbitration clauses may be limited to a specific subject or subjects and that such clauses are not required to 'mandate the arbitration of all claims between [the parties] in order to avoid invalidation on grounds of unconscionability.' " (*Id.* at p. 248.)

Okudan also failed to meet his burden to show the exemption of small claims disputes is so harsh or one-sided that it "shocks the conscience." (See *Pinnacle, supra*, 55 Cal.4th at p. 246.) The provision is neutral and applies to any party's claim that falls within the small claims court's jurisdiction. On its face and in practical application, the provision is mutual. (See *Arguelles-Romero v. Superior Court* (2010) 184 Cal.App.4th 825, 845, fn. 21.) Vehicle purchasers frequently have small claims disputes with sellers—for example, for the cost to repair a defective condition of the vehicle—and it would not be unfair that this dispute would be exempt from arbitration. Consumers

18

benefit from this exception by having a faster and much less expensive dispute resolution forum to resolve claims under a certain monetary amount without needing to retain an attorney. The fact that injunctive or other forms of equitable relief are not available in small claims court does not make the small claims exclusion particularly unfair or one-sided with respect to the claims that do fall within the court's jurisdiction. As *Pinnacle* held, substantive unconscionability does not arise merely because an arbitration clause limits the type of claims subject to arbitration, even if those limitations mean that one party's claims are more likely to fall within the scope of the arbitration clause. (*Pinnacle, supra*, 55 Cal.4th at pp. 248-249.)

We conclude the trial court erred in finding the self-help and small claims court exclusions to be unconscionable.

### C. *Finality Provisions*

The court also found unconscionable the arbitration clauses' finality provision, which reads as follows:

> "The arbitrator's award shall be final and binding on all parties, except that in the event the arbitrator's award for a party is $0 or against a party is in excess of $100,000, or includes an award of injunctive relief against a party, that party may request a new arbitration under the rules of the arbitration organization by a three-arbitrator panel. The appealing party requesting new arbitration shall be responsible for the filing fee and other arbitration costs subject to a final determination by the arbitrators of a fair apportionment of costs."

The court determined three portions of this provision were oppressive and one-sided: (1) the exception to finality if the arbitration award is "$0" or exceeds $100,000; (2) the exception to finality if the arbitration award "includes an award of injunctive

relief"; and (3) the requirement that the appealing party advance all costs for the second arbitration proceeding.

Reviewing these challenged provisions *together*, we find they are moderately unconscionable because they create a situation in which the arbitration appellate rules benefit the economically stronger party (Financial) to the detriment of the weaker party (Okudan) and, in doing so, defeat an essential purpose of the FAA, which is to encourage efficient and speedy dispute resolution. (*Concepcion, supra*, 131 S.Ct. at p. 1749; see *Pinnacle, supra*, 55 Cal.4th at p. 235, fn. 4.) Where, as here, an arbitration agreement provides for broad exceptions to finality and these exceptions generally favor only one party, the private and public policy advantages of the arbitration process no longer exist. Viewing the totality of the circumstances, we cannot say that Okudan fairly agreed to an arbitration process that provides for a second arbitration under the circumstances set forth in the arbitration provision.

The first exception to the finality rule is the provision that either party is entitled to compel a second arbitration before a three-person arbitration panel if the award is in excess of $100,000 or is zero. Okudan argues that although the provision on its face applies to both parties, its practical effect is to favor Financial because Financial is the party most likely to suffer an award against it in excess of $100,000, and the provision unfairly precludes him from appealing a monetary award that is too low but is more than zero.

Financial counters that in this case where the cost of the vehicle was approximately $72,000 and a substantial portion of the vehicle was financed by the seller,

20

it is just as likely that Financial could recover $100,000 and thus that Okudan could benefit from the $100,000-plus award finality exception. Financial also points out that the $0 award exception would have the same effect on both parties because the parties are equally likely to be awarded no monetary damages on a claim.

We agree that because of the cost of the vehicle, it is possible that Okudan could suffer an adverse award of more than $100,000. Although a nonprevailing consumer is not required to bear the prevailing party's attorney fees in an arbitration (Code Civ. Proc., § 1284.3, subd. (a)), a seller/creditor who prevails on a collection claim against a consumer may be awarded the amount of the claim plus interest. A defaulting consumer who purchased a $72,000 vehicle with a minimal downpayment may ultimately owe more than $100,000 if the award includes interest. Moreover, there is nothing one-sided about a rule permitting either party to appeal when the arbitration award does not include any money damages.

However, even if under some circumstances Okudan could exercise his appellate rights to a second arbitration, we agree with Okudan that—when viewing the contract at the time it was signed—it was much more likely that these rights would be exercised by the dealer/creditor. A consumer who proves a claim that a $72,000 vehicle does not work as promised or that the defendant engaged in some form of fraud or unfair business practice would likely receive an award of more than $100,000, particularly when considering the consumer may be entitled to compensatory damages, statutory penalties and attorney fees. (See, e.g., Civ. Code, § 1780.) Although an arbitrator is precluded from awarding prevailing party attorney fees against a consumer, this same rule does not

21

apply where a prevailing consumer seeks to recover attorney fees against the seller/creditor. (See Code Civ. Proc., § 1284.3.)

Moreover, a conclusion that both parties may possibly exercise appellate rights is not the end of our analysis. In *Little v. Auto Stiegler, Inc.* (2003) 29 Cal.4th 1064, the California Supreme Court held a similar provision in an employment arbitration agreement was unenforceable because it was unconscionably one-sided. (*Id.* at pp. 1071-1074.) In *Little,* the arbitration clause in the employment contract provided that if the arbitration award was more than $50,000, either party could appeal the award to a second arbitrator who would "proceed according to the law and procedures applicable to appellate review by the California Court of Appeal . . . ." (*Id.* at p. 1071.) *Little* held that even if there was a possibility that the employee would benefit from the appeal provision because the employer could be a plaintiff in a trade secrets case, the provision was unconscionable because the employer (the drafting party) failed to adequately explain the business justification for the $50,000 threshold. (*Id.* at p. 1073.) In particular, the court found fault with the $50,000 trigger because it would not be a relevant factor in the employee's decision to appeal, which the court said would be typically based on the "potential value of the arbitration claim" compared with "the costs of the appeal," rather than on an arbitrary monetary threshold. (*Ibid.*; see also *Saika v. Gold* (1996) 49 Cal.App.4th 1074, 1080 [finding unconscionable a $25,000 award minimum to trigger a de novo arbitration].)

In this case, Financial argues that the $100,000 minimum reflects a legitimate business decision because it will eliminate "outlier" awards. However, where, as here, a

consumer purchases a vehicle for $72,000, a $100,000 award against either party would not necessarily be considered an outlier award. It appears more likely that the drafters of the arbitration provision included the $100,000-plus finality exception to ensure that the seller/creditor would have a second chance at arbitration if an award is sufficiently large to support the expense of a second arbitration. Although this may be a reasonable business justification, this purpose would generally benefit only the appealing seller/creditor and not the appealing consumer. As reflected in *Little*'s holding, the $100,000 trigger is not necessarily a rational basis for a consumer's decision to appeal an arbitration award. A consumer's decision is instead based primarily on the value of the claim and the likely costs of the appeal.

In any event, we need not decide if the $100,000-plus exception is unconscionable by itself because the second finality exception (the injunction exception) raises even stronger concerns regarding the one-sided nature of the arbitration clause's finality rules. This exception provides a party with a right to compel a second arbitration before a three-person arbitration panel if the first award "*includes* . . . injunctive relief." (Italics added.) This exception does not provide equivalent appellate rights to the party who does not prevail on a request for injunctive relief.

The exception advantages only the seller/creditor. Consumers frequently seek injunctive relief because it is a remedy to protect the public from further unlawful actions by a defendant. (See *People v. Pacific Land Research Co.* (1977) 20 Cal.3d 10, 16-20; *Barquis v. Merchants Collection Assn.* (1972) 7 Cal.3d 94, 103-108.) When buyers bring statutory consumer claims against sellers/creditors, many of the applicable statutes

23

specifically provide for injunctive relief, regardless of the amount of damages/restitution awarded. Under such circumstances, a seller/creditor who obtains a judgment between $0 and $100,000 will have the right to appeal the *entire* award if the award "includes" injunctive relief.

However, there is no reasonable possibility that a consumer can take advantage of this exception because it is unlikely that a seller/creditor will seek or obtain injunctive relief against a buyer. If a creditor seeks immediate or equitable relief after a default, the dealer/creditor has the option to exercise its repossession rights or seek a writ of prohibition in superior court while the arbitration proceeding is pending. (See Code Civ. Proc., §§ 512.010, 1281.8, subd. (b).) Consumers have no equivalent rights, and must bring their claims for provisional or permanent equitable relief in the arbitration proceedings.

Financial argues that "[i]n non-class arbitration, a car buyer will rarely seek or obtain injunctive relief . . . since the car buyer cannot show a risk that he or she will be affected by the dealer's same practice in the future." However, in asserting this argument Financial ignores the various statutory consumer statutes, including California's UCL and CLRA that specifically provide for injunctive relief to prevent similar harm to others, even in cases brought individually. (See, e.g., Bus. & Prof. Code, § 17200 et seq.; Civ. Code, §§ 1750, 1780, subd. (a), 1784.)

We also find unpersuasive Financial's argument that "there is an obvious and powerful business justification" for the injunctive relief exception because "[a]wards of that type are unusual and could potentially be devastating to a dealer's continued

24

operation as a business" and the "awards are just the sort of 'outlier' results that the parties could legitimately think required a second look."

This argument is not supported by any citation to the record or legal authority, nor is it logically persuasive. Because consumers alleging wrongful conduct frequently seek equitable remedies, an arbitration award that includes injunctive relief cannot be fairly characterized as an "outlier." Moreover, an injunction would not necessarily impose substantial financial burdens on a seller/creditor. For example, in this case, Okudan brought a Business and Professions Code section 17200 claim seeking to enjoin Financial from continuing to send NOI's that violate the applicable statutes. If the evidence shows that the NOI's used by Financial do not comply with applicable law, an injunction would be appropriate, but would not necessarily "be devastating to a dealer's continued operation as a business." Significantly, there is no equivalent exception permitting an appeal for awards against a consumer if the award would be financially "devastating," including awards that are less than $100,000 but more than the consumer can afford to pay.

Additionally, as one federal district court recently recognized, allowing an appeal of an arbitration award merely because it includes preliminary or permanent injunctive relief would create substantial delay, undermining the urgency of that type of remedy and defeating the goals of arbitration to provide a relatively prompt and efficient method for obtaining necessary relief. (See *Trompeter, supra*, 2012 WL 1980894, p. *6.)

Financial argues that even if the injunctive relief exception to the finality rule is not mutual, it is merely a "slight departure" from the bilateral nature of the contract. We

25

disagree. Allowing the seller/creditor to challenge any arbitration award merely because it contains some form of injunctive relief, while denying the consumer the right to appeal when an injunction is denied or when the amount of the award is less than $100,000, is not a "slight" departure from mutuality. It systematically tilts the playing field in favor of the seller/creditor. (See *Trompeter, supra*, 2012 WL 1980894, p. *6.)

The unfairness inherent in the arbitration agreement's finality rules is further evidenced by the requirement that the appealing party *advance* the *full costs* of the second arbitration, *including the costs of the three-arbitrator panel*. Under this provision, if Okudan were to appeal an arbitration award, he would be responsible for advancing the costs and fees of that appeal for *both* parties, including the fees for the private arbitrators. Given the common hourly rates of private arbitrators (in the hundreds of dollars), it is reasonable to conclude that Okudan would face the prospect of advancing a minimum of $10,000 to appeal an arbitration award. This payment would be required *after* he was unsuccessful in obtaining any monetary award *or* was found liable for more than $100,000. Further, the arbitration provision does not inform Okudan of the exact amount required to file an appeal and therefore may have the effect of discouraging him from appealing. Additionally, there is nothing in this arbitration agreement providing for a waiver of these upfront fees if Okudan could not afford to pay these fees.

Under analogous circumstances, a California Court of Appeal held a consumer arbitration agreement unconscionable where the agreement imposed a "substantial [upfront] administrative fee" and "there [was] no effective procedure for a consumer to obtain a fee waiver or reduction." (*Gutierrez, supra*, 114 Cal.App.4th at p. 91.) The

26

*Gutierrez* court explained: "A comparison with the judicial system is striking. While imposing far lower mandatory fees, the judicial system provides parties with the opportunity to obtain a judicial waiver of some or all required court fees." (*Ibid.*) Although *Gutierrez* arose in the context of an initial fee (rather than a fee to appeal), the logic of its holding extends to the cost provision challenged here. If the fee for an appeal is so high that it is unlikely that the consumer could bear it, the exceptions to the finality provision are not mutually beneficial to both parties and become solely one-sided. (See *Lau, supra*, 2012 WL 370557, p. *10 ["[s]uch a provision places an unduly harsh burden on consumers and further discourages them from enforcing their rights"].)

Financial argues that in this case, unlike in *Gutierrez*, Okudan did not present any evidence that he could not afford the upfront second-arbitration fees. Generally, in evaluating the fairness of an arbitration agreement under a substantive unconscionability analysis, the ability to pay must be evaluated at the time the agreement is signed. (Civ. Code, § 1670.5; *Parada v. Superior Court, supra,* 176 Cal.App.4th at p. 1583; *Gutierrez, supra*, 114 Cal.App.4th at p. 91.) In his declaration, Okudan said he "cannot afford to pay arbitration fees." However, Okudan presented no evidence regarding his ability to pay fees when he signed the sales contract, nor did he present any evidence of the projected cost amount if he were to request a second arbitration. We agree the lack of this evidence is a factor in determining whether a cost provision in an arbitration agreement is unconscionable. However, even without this evidence, the lack of an effective procedure for a consumer to obtain a waiver of a cost requirement before the consumer must pay *in advance* the entire costs of an arbitration proceeding, *which*

27

*include the costs of a three-arbitrator panel*, is an important factor in the unconscionability analysis. (See *Gutierrez, supra*, 114 Cal.App.4th at pp. 91-92.)

Financial relies on *Green Tree Financial Corp.-Ala. v. Randolph* (2000) 531 U.S. 79 (*Green Tree*), to argue that these arbitration costs are not relevant to show unconscionability. In *Green Tree,* the plaintiff asserted a federal statutory consumer claim against a lender and contended the arbitration agreement between the parties (which was silent on the cost of arbitration) was unenforceable because the arbitration would be too expensive. (*Id.* at pp. 82-84.) Rejecting this claim, the United States Supreme Court held an arbitration agreement silent on arbitration costs is not per se unenforceable without a showing that the plaintiff will actually be required to bear the costs of the proceeding. (*Id.* at pp. 89-92.) The court reasoned that although "[i]t may well be that the existence of large arbitration costs could preclude a litigant . . . from effectively vindicating her federal statutory rights," the litigant bears the burden of showing the likelihood of incurring such costs. (*Id.* at pp. 90-91.) Under this rule, the court found "the record does not show that [the litigant] will bear such costs if she goes to arbitration" and thus the " 'risk' that [the litigant] will be saddled with prohibitive costs is too speculative to justify the invalidation of an arbitration agreement." (*Ibid.*; see also *Parada v. Superior Court, supra*, 176 Cal.App.4th at pp. 1575-1576.)

*Green Tree* does not support Financial's argument that a requirement that a consumer bear the advance costs of a second arbitration has no relevance to California's unconscionability analysis or that we cannot consider the issue without a full factual record of the consumer's ability to pay. Here, unlike in *Green Tree*, the arbitration

agreement provides that if Okudan wishes to appeal an award, he will be required to pay in advance all costs, which (as explained above) are certain to be substantial. This is a relevant factor in the unconscionability analysis.

In sum, we have determined that when considered together, three provisions relating to the finality of the arbitration award combine to deny Okudan the mutual benefits of the arbitration agreement and are substantively unconscionable: (1) the exception to finality for awards that are more than $100,000; (2) the exception to finality for an award that "includes" injunctive relief; and (3) the requirement that the appealing party advance both parties' costs for the second arbitration with a three-arbitrator panel. The parties' arbitration agreement provides a streamlined and efficient procedure when it serves the needs of the seller/creditor, but when such needs are not served—for example when the award is more than $100,000 or includes injunctive relief—the buyer is then subjected to delay and complexity. Moreover, without any waiver for a consumer who cannot afford to pay for an appeal, the requirement that the appealing party advance the full cost of the arbitration (including the fees for the three arbitrators) makes it likely that the seller/creditor will be the only party to take advantage of the appeal procedures. Considered together, these three challenged provisions are moderately substantively unconscionable. Under the sliding-scale test, these provisions cannot be enforced because we have found that the contract was also moderately procedurally unconscionable.

IV. *Severance*

Civil Code section 1670.5, subdivision (a) provides: "If the court as a matter of law finds the contract or any clause of the contract to have been unconscionable at the time it was made the court may refuse to enforce the contract, or it may enforce the remainder of the contract without the unconscionable clause, or it may so limit the application of any unconscionable clause so as to avoid any unconscionable result." A trial court has broad discretion to determine whether severance is appropriate in a particular case. (*Murphy v. Check 'N Go of California, Inc.* (2007) 156 Cal.App.4th 138, 144.)

The trial court refused to sever the unconscionable provisions because it found the arbitration agreement was "permeated with unconscionability" and this problem could not "be cured by severing the offensive provisions . . . ." This conclusion was based on the court's finding that there were multiple unconscionable provisions. In this opinion, we have concluded that the court erred in finding the self-help/small-claims exceptions are unconscionable, and that the unconscionable portions of the arbitration agreement relate solely to the rules regarding the finality of an arbitration award. On remand, the court should reconsider its severance ruling based on a correct analysis of which provisions are unconscionable.

V. *Okudan's Additional Arguments*

Okudan contends an alternate basis for affirming the court's order is to determine that Financial waived its right to seek arbitration by waiting until Okudan amended his complaint to add class allegations. Because the waiver issue is a matter for the trial

30

court's discretion in the first instance, it would not be appropriate for this court to reach Okudan's contentions before the trial court has had the opportunity to address the issue. If, on remand, the court finds that the unconscionable portions of the agreement can be severed and thus the agreement is enforceable, the court should address the waiver argument.

We also reject Okudan's argument that the court erred in finding that Financial adequately proved the arbitration agreement by its submission of its collections manager's declaration. Substantial evidence supports the trial court's factual finding that the parties entered into the arbitration agreement and that the contract was the industry standard form contract. For purposes of the motion to compel, there was no dispute over the contents of the agreement.

DISPOSITION

The court is ordered to vacate its order denying Financial's motion to compel arbitration and to consider whether to sever the provisions found unconscionable in this opinion.  If the court finds the unconscionable provisions can be severed, the court should consider and rule on Okudan's argument that Financial waived its right to compel arbitration.  If the court finds the provisions can be severed and that there was no waiver, it should grant Financial's motion to compel the arbitration.

The parties to bear their own costs on appeal.

HALLER, Acting P. J.

WE CONCUR:


AARON, J.


IRION, J.

32