Filed 12/2/13  Castellanos v. Quality Nissan CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| ALAN I. CASTELLANOS,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>QUALITY NISSAN, INC., etc.,<br><br>    Defendant and Appellant. | G047885<br><br>(Super. Ct. No. 30-2012-00590049)<br><br>O P I N I O N |

Appeal from an order of the Superior Court of Orange County, James E. Loveder, Temporary Judge.  (Pursuant to Cal. Const., art. VI, § 21.)  Affirmed.

Bishton Gubernick, Norris J. Bishton, Jr., and Jeffrey S. Gubernick, for Defendant and Appellant.

Rosner, Barry & Babbit, Hallen D. Rosner and Gregory T. Babbit, for Plaintiff and Respondent.

## INTRODUCTION

Appellant Quality Nissan, doing business as OC Nissan Garden Grove (OC Nissan), appeals from an order denying its motion to compel arbitration. OC Nissan was sued under two consumer statutes by respondent Alan Castellanos, who wanted his money back for a car he had purchased from the dealership, plus other damages. OC Nissan moved to compel arbitration pursuant to the provision in a form sales contract Castellanos had signed after he bought the car. The trial court denied the motion.

We affirm the order denying the motion. The arbitration provision in the sales contract is both procedurally and substantively unconscionable. The trial court correctly declined to enforce it.

## FACTS

In August 2012, Castellanos sued OC Nissan for violations of the Automobile Sales Finance Act and the Consumers Legal Remedies Act in connection with his purchase of a car from the dealership. OC Nissan moved to compel arbitration pursuant to an arbitration provision in the form Retail Installment Sales Contract Castellanos signed to buy the car.[1] Castellanos opposed the motion on unconscionability grounds, stating, among other things, that he is a Spanish speaker with limited English skills and that no one at OC Nissan had alerted him to the presence of an arbitration provision in the contract. [2]

---

[1] Castellanos actually signed two contracts. The first one was signed on the occasion of the car purchase. OC Nissan then had him sign a second contract approximately a week later because it was unable to find a finance company to buy the contract as written. The second contract increased the price of the vehicle by $1,550.

[2] The declaration Castellanos filed to support his opposition is seriously defective. Each paragraph appears first in Spanish, then in English. There is no indication whatsoever as to who prepared the English translation; given Castellanos's representations about his limited English, he could not be the translator. Moreover, in at least one paragraph, the translator has added a sentence that has no equivalent in the preceding Spanish text.

California Rules of Court, rule 3.1110(g) requires all exhibits to a motion translated from a foreign language to be certified under oath by a qualified interpreter. No such certification or oath is present here, and, as stated above, the interpreter is not identified, so there is no information about his or her qualifications. OC Nissan, however, did not object to the declaration on these or any other grounds. (See, e.g., *People v. Panah* (2005) 35 Cal.4th 395, 476 [incompetent evidence received without objection sufficient to support trial court's determination].)

The court denied OC Nissan's motion on the grounds the arbitration provision was both procedurally and substantively unconscionable.

## DISCUSSION

"'Unconscionability is ultimately a question of law for the court.' [Citations.] However, numerous factual issues may bear on that question. [Citation.] Where the trial court's determination of unconscionability is based upon the trial court's resolution of conflicts in the evidence, or on the factual inferences which may be drawn therefrom, we consider the evidence in the light most favorable to the court's determination and review those aspects of the determination for substantial evidence. [Citations.]" (*Gutierrez v. Autowest, Inc.* (2003) 114 Cal.App.4th 77, 89 (*Gutierrez*).)

"'[U]nconscionability has both a "procedural" and a "substantive" element,' the former focusing on '"oppression"' or '"surprise"' due to unequal bargaining power, the latter on '"overly harsh"' or '"one-sided"' results. [Citation.] 'The prevailing view is that [procedural and substantive unconscionability] must *both* be present in order for a court to exercise its discretion to refuse to enforce a contract or clause under the doctrine of unconscionability.' [Citation.] But they need not be present in the same degree. 'Essentially a sliding scale is invoked which disregards the regularity of the procedural process of the contract formation, that creates the terms, in proportion to the greater harshness or unreasonableness of the substantive terms themselves.' [Citations.] In other words, the more substantively oppressive the contract term, the less evidence of procedural unconscionability is required to come to the conclusion that the term is unenforceable, and vice versa." (*Armendariz v. Foundation Health Psychcare Services, Inc.* (2000) 24 Cal.4th 83, 114 (*Armendariz*).)

The Retail Installment Sales Contract at issue here has been the subject of several appellate court opinions in this state, and the issue of the contract's unconscionability is presently before the California Supreme Court in *Sanchez v. Valencia Holding Co.*(2011) 201 Cal.App.4th 74, review granted March 21, 2012,

3

S199119) and several related cases.  In the meantime, we join with most of the other courts that have inspected this contract in finding the arbitration provision unconscionable and therefore unenforceable.

Although the contract occupies several pages in the record before us, it apparently occupies only two pages – two very long, densely printed pages – in its original form.[3]  Castellanos' signature appears on what seems to the be the end of the first page, and his initials or signature also appears at various places on the first page. The second page, which contains the arbitration provision, is devoid of any initials or signature.[4]

## I.  Procedural Unconscionability

As even OC Nissan concedes, the contract is procedurally unconscionable. OC Nissan does not dispute that it was presented to Castellanos on a take-it-or-leave-it basis as a contract of adhesion.   (See *Gentry v. Superior Court* (2007) 42 Cal.4th 443, 469.)  The element of "surprise" is also present because the arbitration provision is on the back of the form, and there is no indication, such as nearby initials, that it was ever called to Castellanos' attention, even though Castellanos had to initial or sign in several places on the face page in addition to signing the signature line at the bottom.

The English version of the contract included an acknowledgment that the customer had read both sides of the contract, specifically mentioning the arbitration provision, in a box just above the signature line on the front page.  The Spanish version,

---

3       According to the Office of the Attorney General, the contract length is dictated by the numerous consumer disclosures required by state and federal law and by the requirement that all of these disclosures be contained in a "single document" (Civ. Code § 2981.9), which the industry has interpreted to mean "one piece of paper."  (92 Ops.Cal.Atty.Gen. 97 (2009).)  As a result, the form contract is two feet long and is printed on the front and back of one sheet.
        The Attorney General has opined that "single document" does not necessarily mean one piece of paper, and a contract printed on multiple attached pages with an integrated numbering sequence meets the statutory requirement.
4       Castellanos attached a Spanish version of the contract to his opposition, but once again he failed to include a certified translation of this exhibit.  (See Cal. Rules of Court, rule 31110(g).)  As with Castellanos' declaration, OC Nissan offered no objection to the introduction of this version of the contract into evidence, and the trial court considered it in its determination of procedural unconscionability.

4

however, omitted this acknowledgement.[5] The trial court found the omission of the acknowledgement in the Spanish version to be evidence of an additional component of "surprise."

## II. Substantive Unconscionability

As noted above, one of the hallmarks of substantive unconscionability is a "one-sided" agreement that distributes the benefits and burdens unfairly. (*Little v. Auto Stiegler, Inc.* (2003) 29 Cal.4th 1064, 1071 (*Little*).) Our courts look at the practical application of the contract terms. Thus, an agreement that appears facially neutral will be found unconscionable if its practical application results in an illusory benefit to the party without bargaining power. (See, e.g., *Saika v. Gold* (1996) 49 Cal.App.4th 1074, 1080; *Harper v. Ultimo* (2003) 113 Cal.App.4th 1402, 1408-1408.) The contract at issue here contains several such clauses.

*"We [i.e., OC Nissan] will advance your [i.e., Castellanos'] filing, administration, service, or case management fee and your arbitrator or hearing fee all up to a maximum of $2500, which may be reimbursed by decision of the arbitrator at the arbitrator's discretion."*

Not much in the way of arbitration before the retired judges or attorneys in large urban centers can be had for $2,500. Castellanos presented evidence that he would be unable to fund an arbitration in which an arbitrator charged several hundred dollars an hour. Moreover, the sentence contains the implicit threat that the arbitrator could order Castellanos to pay back the $2,500 at some point. It is, after all, being "advanced."

OC Nissan now argues that Castellanos did not make his case for inability to pay because he did not submit evidence of his own resources, the anticipated cost of the arbitration, and the amount of the potential award. OC Nissan did not make these

---

[5] The Spanish version thus violated Civil Code section 1632, subdivision (b)(1), which requires "every term and condition" of conditional sales contracts for automobiles to be translated into Spanish if the negotiation was conducted primarily in Spanish.

objections to the adequacy of Castellanos' evidence in the trial court. Instead it argued below, and argues here, that the American Arbitration Association rules limit a consumer's fees to $375.

The difficulty with this argument is that this information is absent from the arbitration provision itself, and OC Nissan did not supply Castellanos with a copy of the AAA rules to enlighten him on that point. According to the arbitration provision in the contract, once the expenses reached $2,500, Castellanos would have to start paying. Moreover, the arbitration agreement permits Castallanos to choose another arbitration organization, subject to OC Nissan's approval. The arbitration provision also states that in the event of a conflict between the AAA rules and the provision, the provision controls. So it is not at all certain that AAA rules would even apply.[6]

It is true, as OC Nissan argues, that neither federal nor state courts have adopted a per se approach to the expenses of consumer arbitrations such as that taken by our Supreme Court in *Armendariz* for employment cases. Under *Armendariz*, the employer cannot require an employee to bear any type of expense that he or she would not be required to pay if the case were heard by a court. (*Armendariz, supra,* 24 Cal.4th 83, 110-111.) This rule presumably applies regardless of the employee's ability to pay. In *Gutierrez, supra,* the court declined to adopt the *Armendariz* rule in consumer cases, opting instead for the approach outlined in *Green Tree Financial Corp.-Alabama v. Randolph* (2000) 531 U.S. 79, 92 (*Green Tree*), which mandated a case-by-case determination of whether arbitration would be prohibitively expensive. (*Gutierrez, supra,* 114 Cal.App.4th at p. 97.)

But, unlike the party seeking to avoid arbitration in *Green Tree*, *supra,* who presented no evidence whatsoever regarding arbitration expenses or ability to pay (531

---

6      This provision presents another potential for unfairness. If Castellanos does not want to use the AAA, OC Nissan can simply veto his alternative choice. Because the other arbitration organization mentioned in the provision no longer accepts consumer cases, Castellanos essentially has no control over the arbitration organization that would hear the matter, even though the provision itself makes it appear that he has alternatives.

U.S. at pp. 90-91), Castellanos did present some evidence on this subject. OC Nissan now claims that this evidence is inadequate, but it made no such argument in the trial court.

Although the trial court did not specifically rule on the issue of undue expense, "the order denying a petition to compel arbitration, like any other judgment or order of a lower court, is presumed to be correct, and all intendments and presumptions are indulged to support the order on matters as to which the record is silent. [Citation.] Implicit in the trial court's decision is its determination that . . . the fees required to initiate the arbitration were so substantial that plaintiffs were unable to pay them. Imposing such fees would effectively prevent plaintiffs from vindicating their statutory rights." (*Gutierrez, supra,* 114 Cal.App.4th at p. 88.)

*"You and we retain any right to self-help remedies, such as repossession. You and we retain the right to seek remedies in small claims court for disputes and claims within that court's jurisdiction, unless such action is transferred, removed, or appealed to a different court. Neither you nor we waive the right to arbitrate by using self-help remedies or filing suit."*

Although this portion appears even-handed, it actually benefits mostly, if not entirely, OC Nissan. In effect, it carves out exceptions to arbitration, but exceptions only OC Nissan is likely to use. Castellanos would not be in a position to repossess anything from OC Nissan, so "self-help remedies" do not help him. Similarly, failure to make his payments is the most likely claim OC Nissan would have against Castellanos. The provision permits OC Nissan to go to small claims court if arrearages on Castellanos' payments begin to approach the jurisdictional limit. (See Code Civ. Proc., § 116.220, subd. (a)(1).) The damages from any serious claims Castellanos would have against OC Nissan, however, are likely to be too substantial for small claims court.[7] (See Code Civ.

_____

[7] Castellanos' damages claims in this case, for example, exceed the jurisdictional limit of small claims court.

Proc., § 116.221.)  Thus, in any but the most minor disputes Castellanos would have against OC Nissan, he would have to choose between waiving excess damages (see Code Civ. Proc., § 116.220, subd. (d)) or submitting to arbitration.  In the ordinary course, OC Nissan would be put to no such choice.

*"The arbitrator's award shall be final and binding on all parties, except that in the event the arbitrator's award for a party is $0 or against a party is in excess of $100,000, or includes an award of injunctive relief against a party, that party may request a new arbitration under the rules of the arbitration organization by a three-arbitrator panel.  The appealing party requesting new arbitration shall be responsible for the filing fee and other arbitration costs subject to a final determination by the arbitrators of a fair apportionment of costs."*

Arbitration is final and binding, except when it isn't.  When it isn't is most likely to be when OC Nissan loses and faces a big award or has an injunction entered against it.  (It is hard to imagine a scenario in which an arbitrator enters an injunction against a customer.)  Then OC Nissan gets to start all over, with more artillery.

The California Supreme Court examined a similar provision in *Little, supra,* 29 Cal.4th 1064, an employment case.  In *Little,* the arbitration clause provided that either party could request a "reversal and remand, modification, or reduction" by a second arbitrator of any award over $50,000.  (*Id.* at p. 1071.)  The court pointed out that, in practical terms, this provision benefited the employer, since the employer, not the employee, is the party most likely to have a large damage award entered against it.  As the court observed, an asymmetrical arbitration agreement may be justified "when there is a 'legitimate commercial need' [citation]," but "that need must be 'other than the employer's desire to maximize its advantage' in the arbitration process.  [Citation.]"  (*Id.* at p. 1073.)

Assuming an OC Nissan customer lost the arbitration completely and wanted to appeal, he or she would face the daunting prospect of paying the filing fee and

all the expenses for not one but three arbitrators until the end of the appeal, when the arbitrators *might* reapportion costs. A potential car buyer who could afford such an outlay would probably not be shopping for a Nissan.

Let's not beat about the bush. Businesses put arbitration provisions in their adhesion contracts because they think that if they are sued they will fare better in arbitration than they will before a jury. Consumers and employees think so too; that is why they fight arbitration clauses. Arbitration clauses are in a contract to protect the company proffering the agreement, not the person signing it. The arbitration provision in this contract is designed to give OC Nissan every possible advantage if it is sued for some cause of action that could yield substantial damages, such as the statutory violations alleged in Castellanos' complaint. OC Nissan is not concerned about being sued because a car's heater does not work or a hubcap fell off.

The $100,000 threshold is OC Nissan's tacit acknowledgement that the costs of appealing any award under that amount outweigh the potential for recovery. In other words, a person who wanted to appeal from a zero award, such as Castellanos, should expect to have to come up with cash somewhere in that neighborhood to fund the appeal. The improbability that the typical car buyer could bear that expense thus insulates OC Nissan from any threat of appeal of a customer's adverse award in arbitration.

OC Nissan was entitled to any contractual protection it could build into its deal with Castellanos, so long as that protection was openly and honestly made a part of the deal. But this arbitration agreement is permeated with substantively unconscionable terms. In such cases, only a small amount of procedural unconscionability is sufficient to defeat enforcement. OC Nissan has conceded procedural unconscionability here, and we find both elements present in sufficient quantities to make the provision unenforceable.

**DISPOSITION**

The order denying the motion to compel arbitration is affirmed.

Castellanos is to recover his costs on appeal.


BEDSWORTH, J.

WE CONCUR:


RYLAARSDAM, ACTING P. J.


ARONSON, J.